*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0046P (6th Cir.)
File Name: 00a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WANDA SOWARDS,
  *Plaintiff-Appellant,*

  *v.*

No. 98-6768

LOUDON COUNTY,
TENNESSEE and TIMOTHY
GUIDER, individually and in
his official capacity as Sheriff
of Loudon County,
Tennessee,
  *Defendants-Appellees.*



Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 96-00659—James H. Jarvis, District Judge.

Argued: October 26, 1999

Decided and Filed: February 8, 2000

Before: JONES, MOORE, and GILMAN, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Peter Alliman, WHITE, CARSON & ALLIMAN, Madisonville, Tennessee, for Appellant. Dean B. Farmer, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Peter Alliman, WHITE, CARSON & ALLIMAN, Madisonville, Tennessee, for Appellant. Dean B. Farmer, Keith L. Edmiston, HODGES, DOUGHTY & CARSON, Knoxville, Tennessee, for Appellees.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. Wanda Sowards filed suit under 42 U.S.C. § 1983 against Loudon County and the Sheriff of Loudon County Timothy Guider, in his individual and official capacities, claiming that she was terminated from her position as a jailer at the Loudon County Sheriff's Department in retaliation for exercising her First Amendment rights of political and intimate association. Sowards's husband, William Sowards, had run unsuccessfully for sheriff against Guider in early 1994. Guider terminated Sowards's employment in July 1995 allegedly because she missed an outstanding warrant on a person brought into the jail. The district court granted Loudon County and Guider's motion for summary judgment and dismissed the case because it found no genuine issue of material fact existed to show Sowards's constitutionally protected activity substantially motivated Guider to terminate her employment. Sowards appeals the dismissal of her case. Loudon County and Guider respond that even if Sowards's First Amendment rights were violated, political affiliation is a proper consideration for the position of a jailer under the *Elrod/Branti* exception. In addition, they claim that Guider is entitled to qualified immunity in his individual capacity.

We conclude that Sowards has established that she suffered an adverse action while engaged in constitutionally protected activity. A genuine issue of material fact exists whether Guider's action was substantially motivated by this activity. Because political considerations are not appropriate for the position of a jailer, we hold that the *Elrod/Branti* exception to the First Amendment rule protecting public employees against politically-based dismissals does not apply in this case. Finally, Guider is not entitled to qualified immunity in his individual capacity. Therefore, we **REVERSE** and **REMAND** for further proceedings in Sowards's retaliation suit against Loudon County and Guider.

## I. FACTS AND PROCEDURE

Wanda Sowards began working at the Loudon County Sheriff's Department ("LCSD") as a road deputy in 1986 and then transferred to the position of a jailer in 1989. In early 1994, her husband, William Sowards, announced that he would be running as a Republican for the position of Sheriff of Loudon County against incumbent Timothy Guider, also a Republican. Sowards's husband lost to Guider in the Republican primary election in May 1994.

Sowards claims that after her husband announced his candidacy, her work environment changed significantly. She asserts that her supervisors ostracized her, disciplined her more harshly than her co-workers, changed her day shift to a split shift, and reduced her overtime opportunities. Finally, on July 19, 1995, she was terminated allegedly because she had missed an outstanding warrant.

On June 28, 1995, Edward D. Ricker was arrested on a DUI charge and brought to the LCSD jail. Sowards was working on that date and was responsible for checking for any outstanding warrants on persons brought into the facility. She claims that she did not find an outstanding warrant on Ricker because she had understood his name to be "Wicker," resulting in Ricker later being released without the warrant

being served. Sowards's supervisor, Chief Jailer Joe Bridges, recommended terminating her employment because the warrant involved a serious burglary charge that had been outstanding for over one year. He did not consider the fact that she may have misunderstood the person's name to be an important consideration in his recommendation. After receiving Bridges's recommendation, Guider did not conduct any further investigation. A few days later he agreed to terminate Sowards's employment.

Sowards filed a complaint against Loudon County and Guider, in his individual and official capacities, pursuant to 42 U.S.C. § 1983, claiming that she was terminated in retaliation for the exercise of her First Amendment rights of political and intimate association. Loudon County and Guider filed a motion for summary judgment, arguing that no genuine issue of material fact exists regarding Sowards's retaliation claim. They also claimed that political considerations are appropriate for the position of a jailer under the *Elrod/Branti* exception and that Guider is entitled to qualified immunity in his individual capacity. The district court granted Loudon County and Guider's motion in part and dismissed Sowards's claim based on the right of intimate association. The district court denied their motion with respect to Sowards's claim based on the right of political association and found insufficient evidence upon which to decide whether political considerations are appropriate for the position of a jailer and to evaluate the defense of qualified immunity. After more discovery, Loudon County and Guider filed a second motion for summary judgment based on the same arguments. Sowards filed a response to this motion and a motion to reconsider the district court's dismissal of her right of intimate association claim. The district court granted Sowards's motion to reconsider her right of intimate association claim but then granted Loudon County and Guider's motion for summary judgment dismissing all of Sowards's claims. It reasoned that no rational juror could find Guider's decision to terminate Sowards was substantially motivated by the exercise of her First Amendment rights of

had terminated the employment of his deputy sheriffs for political reasons. *See Hall v. Tollett*, 128 F.3d 418, 429-30 (6th Cir. 1997). Defendants seem to argue that because the law was unclear as to whether political affiliation was an appropriate consideration for the position of deputy sheriff in Tennessee, it also was unclear regarding the position of a jailer at the LCSD. A deputy sheriff, however, has different duties than a jailer under Tennessee law. For example, the deputy sheriffs in *Hall* were responsible for patrolling the roads of the county and responding to emergency situations. *See id.* at 429. Therefore, the fact that the law may have been unclear regarding the applicability of the *Elrod/Branti* exception to the position of deputy sheriff in 1995 is not dispositive in this case.

As discussed in Part II.B *supra*, however, the position of a jailer is analogous to the position of a prison guard, and the Supreme Court concluded that political considerations are inappropriate for the employment decisions concerning a prison guard in 1990. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990). It was objectively unreasonable for Guider to believe that political considerations were appropriate for the position of a jailer in 1995 in light of the Supreme Court's 1990 *Rutan* decision. Because the law was so clearly established that he could not reasonably take political considerations into account when terminating Sowards, Guider is not entitled to qualified immunity in his individual capacity for Sowards's political association claim.

### III. CONCLUSION

For the reasons stated above, we **REVERSE** the district court's grant of summary judgment to defendants and **REMAND** for further proceedings on Sowards's claim of retaliation based on her rights of political and intimate association under the First Amendment.

have noted that a Supreme Court or Sixth Circuit decision specifically holding that a certain position falls under this exception is not necessary for the law to be clearly established under the doctrine of qualified immunity. *See McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir. 1996). Neither the Supreme Court nor the Sixth Circuit has evaluated whether a jailer at the LCSD, or a jailer possessing the same duties as those mandated by Tennessee law, falls under the *Elrod/Branti* exception.[4]

Defendants argue that our decision in *Cagle v. Gilley*, 957 F.2d 1347 (6th Cir. 1992), shows the "murkiness" of the law with respect to positions in a county sheriff's department. In that decision, we concluded that as of 1988, no clearly established law prohibited the consideration of political affiliation for the position of deputy sheriff in Tennessee. *See Cagle*, 957 F.2d at 1349 (pointing out a circuit split regarding whether this position is subject to the *Elrod/Branti* exception).[5] In another decision, we determined that the state of the law regarding patronage dismissals of deputy sheriffs in Tennessee had not been clarified as of September 1, 1994, and therefore we granted qualified immunity to a sheriff who

---

[4] We emphasize again that the actual duties of a particular position, and not its title, govern the *Elrod/Branti* analysis. *See Hall v. Tollett*, 128 F.3d 418, 423 (6th Cir. 1997). Because the duties of a jailer may vary from state to state, it is important to examine the applicable state and local law when deciding whether political considerations may be used in employment decisions concerning a jailer. *See id.* at 427-29 (engaging in a case-by-case analysis of state and local law to determine whether the position of deputy sheriff falls within the *Elrod/Branti* exception). Therefore, in deciding whether the law was clearly established for the purpose of qualified immunity, we look for decisions that involve positions with the same or similar statutory duties.

[5] Sowards correctly notes that the *Cagle* court did not recognize or address the Supreme Court's conclusion in *Elrod* that political considerations may not be used for the employment of the position of chief deputy sheriff. *See Elrod v. Burns*, 427 U.S. 347, 350-51, 372-73, 374-75 (1976).

---

political and intimate association. Sowards filed a timely notice of appeal of the district court's decision.

## II. ANALYSIS

### A. Sowards's First Amendment Retaliation Claim

A district court's decision to grant summary judgment is reviewed de novo. *See General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097 (6th Cir. 1994). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). We must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). We view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *See General Elec. Co.*, 29 F.3d at 1097-98.

Sowards claims that she was terminated from her position as a jailer at the LCSD for exercising her First Amendment rights of political and intimate association in violation of 42 U.S.C. § 1983. In order to establish retaliation for engaging in constitutionally protected activity, a plaintiff must prove the following elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In brief, this analysis focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected

activity. *See Mattox v. City of Forest Park*, 183 F.3d 515, 520-21 (6th Cir. 1999). If the plaintiff meets her burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *See Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1802 (1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).[1]

---

[1] In *Whitaker v. Wallace*, 170 F.3d 541, 544 (6th Cir. 1999), a panel in this circuit applied the burden shifting analysis used in Title VII employment discrimination cases to a First Amendment retaliation claim. The Supreme Court, however, has expressly held that in a First Amendment retaliation case, once a plaintiff shows that her constitutionally protected conduct was a substantial factor in an adverse employment decision, the burden of persuasion shifts to the defendant to "show[] by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) (Stating that to prevail in a First Amendment retaliation claim, "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct."). We have followed this analysis in opinions in this circuit. *See Barrett v. Harrington*, 130 F.3d 246, 262 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1517 (1998); *Ratliff v. Wellington Exempted Village Sch. Bd. of Educ.*, 820 F.2d 792, 795 (6th Cir. 1987); *see also Kreuzer*, 128 F.3d 359, 365 n.1 (6th Cir. 1997) (Moore, J., dissenting) (concurring in the majority opinion's statement of the law and noting that unlike the employment discrimination cases brought under Title VII, once a plaintiff establishes sufficient evidence that the protected conduct was a substantial or motivating factor behind the adverse employment action, the burden of persuasion shifts to the defendants to prove that the same decision would have been made in absence of the protected conduct), *cert. denied*, 118 S. Ct. 1802 (1998); *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir. 1993) (noting that unlike the burden shifting analysis performed under Title VII cases, in a First Amendment political retaliation claim, "once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in

1152, 1154 (6th Cir. 1996). Under the first step, we must examine "whether plaintiff has shown a violation of a constitutionally protected right." *Id.* "If the answer is yes, then the second step is to determine whether the right is so 'clearly established' that a 'reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As discussed in Part II.A *supra*, Sowards has provided sufficient evidence from which a reasonable juror could conclude that Guider terminated her because of her association with her husband in violation of her First Amendment right of intimate association. In *Adkins v. Board of Education*, 982 F.2d 952, 956 (6th Cir. 1993), we determined that a high school secretary's right of intimate association, protecting her from being fired because of her relationship with her husband, is a clearly established right in this circuit. We cited to two Supreme Court decisions, establishing the right in 1984 and 1987, and concluded it was objectively reasonable to expect the public official to respect that right in 1988. *See Adkins*, 982 F.2d at 956 (citing *Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537 (1987); *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)). Because Sowards's right of intimate association was clearly established by July 19, 1995, it was objectively reasonable for Guider to understand that he was violating that right when he terminated her. Therefore, he is not entitled to a defense of qualified immunity on this claim.

With respect to Sowards's political association claim, a genuine issue of material fact exists as to whether Guider violated this First Amendment right in terminating her employment. The right of political association with a particular campaign is a clearly established right. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990). Defendants argue, however, that the law governing which public positions fall under the *Elrod/Branti* exception was not so clearly established in 1995 for Guider to understand that he was violating Sowards's right of political association. We

inmates, taking precautions to ensure their safety, and arranging communications between inmates and the public. These duties essentially mirror the duties of a prison guard. In *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990), the Supreme Court determined that political considerations are not appropriate for employment decisions regarding the position of a prison guard. Defendants argue that LCSD jailers are not like prison guards because they work in a small facility where each individual decision has serious consequences, unlike a large prison facility with several guards on duty and multiple levels of supervision. This argument is not persuasive because, like a jailer, a prison guard's individual decisions and actions also could have serious consequences for the inmates and the visiting public. Therefore, based on the *Rutan* decision, it is not appropriate to take political considerations into account for the position of a jailer at the LCSD, and the *Elrod/Branti* exception is not applicable in this case.

## C. Qualified Immunity

Defendants also argue that Guider is entitled to qualified immunity to the extent that he was sued in his individual capacity. The district court determined that sufficient evidence did not exist upon which to make a decision on this defense. If a plaintiff states a claim under 42 U.S.C. § 1983, then this court reviews de novo a district court's decision regarding qualified immunity. *See Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).

The doctrine of qualified immunity provides that "government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We have adopted a two-step test for determining whether a government official is entitled to qualified immunity. *See Brennan v. Township of Northville*, 78 F.3d

### 1. Protected Conduct

To prove the first element of retaliation, Sowards argues that she was exercising her rights of both political and intimate association protected by the First Amendment. The right of political association is a well established right under the First Amendment for "'political belief and association constitute the core of those activities protected by the First Amendment.'" *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990) (quoting *Elrod v. Burns*, 427 U.S. 347, 356 (1976)). Support of a political candidate falls within the scope of the right of political association. *See Elrod*, 427 U.S. at 356-57. Therefore, Sowards was exercising her constitutionally protected right of political association by supporting her husband's campaign for the office of Sheriff of Loudon County.

Sowards also claims that she was retaliated against because of her exercise of her First Amendment right of intimate association with her husband. In *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984), the Supreme Court stated that one type of constitutionally protected freedom of association is the right "to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." The Supreme Court reasoned that the formation and preservation of certain types of "highly personal relationships" is necessary to secure individual liberty and suggested that marriage is such a relationship that must be protected from unwarranted state interference. *See id.* at 618-19. Although the Supreme Court

---

any event for nondiscriminatory reasons"). When a later decision from this court conflicts with its prior decisions, the earlier cases control. *See Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 765 (6th Cir. 1999). Therefore, the Supreme Court's *Mt. Healthy* analysis, as applied by this circuit in *Barrett* and *Ratliff, inter alia*, governs First Amendment retaliation claims in this circuit.

did not explain whether this right stems from the freedom of association under the First Amendment or the fundamental right to marry under the Due Process Clause of the Fourteenth Amendment, we have analyzed the right of intimate association under the First Amendment. *See Adkins v. Board of Educ.*, 982 F.2d 952, 955-56 (6th Cir. 1993).

In *Adkins*, a high school secretary claimed that the superintendent of the school board refused to recommend continuing her employment in retaliation for her association with her husband, who was the principal of the high school. We concluded that the plaintiff secretary had made a prima facie case of a constitutional violation because evidence showed that her freedom to form "'certain intimate human relationships'" was implicated in the superintendent's decision not to recommend rehiring her. *See* 982 F.2d at 956 (quoting *Roberts*, 468 U.S. at 617). We explained, "it is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment. The right of association is violated if the action constitutes an undue intrusion by the state into the marriage relationship." *Id.* (quotation omitted).[2] Accordingly, Sowards has the right to associate intimately with her husband, and her marriage relationship is protected from undue intrusion by the state. Sowards claims that she lost her job because of her protected marital relationship, and that this constitutes undue intrusion by the state in that relationship. See *Adkins*, 982 F.2d at 956.

---

[2]We note that the *Adkins* decision merges the analysis of whether a plaintiff was engaged in constitutionally protected conduct with the analysis of whether an adverse action violated the plaintiff's constitutional rights, which have been separated into two steps in more recent decisions. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *Mattox v. City of Forest Park*, 183 F.3d 515, 520-21 (6th Cir. 1999); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). However, it is clear that under the *Adkins* decision, the right of intimate association is protected only where the plaintiff alleges an undue interference with a protected intimate relationship.

Cir. 1991) (holding that mayor's secretary had access to confidential and political material because she controlled the lines of communication to the mayor)). Both Guider and Bridges stated that Sowards did not have any access to any confidential or political information. Therefore, category three does not apply in this case.

Although none of the *McCloud* categories are applicable, defendants also cite to several cases in other circuits that have held upheld the use of political considerations for positions allegedly similar to a jailer at the LCSD. The primary case they rely on, however, is inapposite. In *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997), *cert. denied*, 118 S. Ct. 881 (1998), the Fourth Circuit held that a sheriff could base his decision to fire or hire deputy sheriffs on political considerations. It reasoned that under North Carolina law the deputy sheriffs "play a special role in implementing the sheriff's policies and goals" because they are sworn to carry out law enforcement on behalf of the sheriff and make independent decisions which may ultimately affect law enforcement policies. *Jenkins*, 119 F.3d at 1162. In addition, the sheriff relies on the deputies to foster public confidence in law enforcement and is civilly liable for their actions. *See id.* at 1162-63. Based on this evidence, the court concluded that deputy sheriffs are the "alter ego" of the sheriff in North Carolina. *See id.* at 1164. Defendants argue that, like the deputy sheriffs in *Jenkins*, jailers at the LCSD in fact establish policy with the individual decisions they make and the sheriff is civilly liable for their actions. Although jailers have some decisionmaking authority with respect to providing for the needs and safety of the prisoners, they are supervised by and must follow the directives of Guider and Bridges. They have no role in the policymaking process of the prison. While Guider is civilly liable for jailers' actions, this is not sufficient to characterize them as his "alter-ego."

A jailer's statutory duties under Tennessee law generally involve providing for the needs and safety of the jail's inmates, such as providing food, bedding, and support for the

J.A. at 91. Guider admitted that Sowards's position as a jailer did not involve any policymaking for the day-to-day operation of the prison facility and that she was not in a confidential relationship with him regarding how to run the facility. Nor did he believe that political loyalty was required for Sowards to carry out her responsibilities. In addition, Bridges stated that Sowards did not make policy for the jail or the sheriff's department and that she would carry out the duties and orders that he or the sheriff would give to her. He also agreed that this position did not require political loyalty to the sheriff.

Loudon County and Guider claim that the position of a jailer could fall under *McCloud* category two or three. With respect to category two, they assert that Guider and Bridges delegated much of their discretionary authority regarding the day-to-day operation of the jail to jailers. The position of a jailer does not fall under *McCloud* category two, however, because this category involves delegations of policymaking authority. "Category two also exists to capture those who would otherwise be category one policymakers, except that the federal government, state, county, or municipality has chosen for whatever reason not to set out the responsibilities of such a position in a statute, ordinance, or regulation." *McCloud*, 97 F.3d at 1557 n.31. Both Guider and Bridges admitted that jailers do not participate in any type of policymaking for the prison and are simply required to follow directives. Therefore, the position of a jailer does not fall under *McCloud* category two.

In addition, defendants argue that a jailer falls under category three because a jailer acts as a conduit for communication between prisoners and the sheriff. The *McCloud* category three position involves employees who control the lines of communication to category one or category two position-holders. *See id.* at 1557 n.32. This category is concerned with this type of employee's access to confidential, political information transmitted to the policymaker, which requires political loyalty. *See id.* (citing *Faughender v. City of North Olmsted*, 927 F.2d 909, 914 (6th

Defendants respond with several arguments. First, they mistakenly assert that Sowards's right to marry was not violated because she is still married to her husband and that she does not have a fundamental right to marry a specific person. With respect to the First Amendment's right of intimate association, the state action need not cause "abandonment or dissolution" of the marriage to constitute an undue intrusion. *See Adkins*, 982 F.2d at 956. In addition, defendants' citations to cases involving the fundamental right to marry under the Due Process Clause of the Fourteenth Amendment are not applicable to Sowards's right of intimate association claim under the First Amendment. Defendants also argue that Guider's actions need only satisfy a rational basis test. However, it is not necessary to engage in such an analysis at the summary judgment stage if the plaintiff alleges that she was terminated on the basis of a protected relationship. *See Montgomery v. Carr*, 101 F.3d 1117, 1127-28 (6th Cir. 1996). Sowards claims that Guider dismissed her because of her protected relationship with her husband, which could constitute an undue interference in that relationship under *Adkins*. Therefore, we conclude that Sowards has met her burden at this juncture of establishing that she was engaged in the protected conduct of intimate association under the First Amendment.

### 2. Adverse Action

Sowards then must prove that she suffered an adverse action by Loudon County and Guider that caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in her constitutionally protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Sowards was dismissed from her position as a jailer at the LCSD. A dismissal qualifies as an adverse employment action for the purposes of a retaliation claim. *See id.* at 396 (pointing to "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote" as examples of adverse actions in the employment context).

### 3.  Requisite Causal Connection

Finally, Sowards has the burden of proving that her termination was substantially motivated by the exercise of her constitutional rights.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Sowards worked as a jailer at the LCSD for several years and never had any problems until her husband announced that he was running for the position of Loudon County Sheriff.  She then noticed an abrupt change in her work environment.  She asserts that her supervisors ostracized her, changed her day shift to a split shift, disciplined her more harshly than her co-workers, told her she was being watched by the sheriff's office, and reduced her overtime opportunities.  On July 19, 1995, Guider terminated Sowards from her position as a jailer allegedly in response to an incident that occurred on June 28, 1995, in which Sowards failed to serve an outstanding warrant for burglary on a person who had been brought to jail on a DUI charge.  In Sowards's dismissal letter, Guider explained that he was following Chief Jailer Bridges's recommendation to terminate her employment because it was her responsibility to check for outstanding warrants and because of the serious nature of the burglary charge which had been outstanding for over a year.  In his deposition, Guider denied that he took into account the fact that Sowards was married to William Sowards when terminating her.  However, when asked "[i]f Wanda Sowards had been one of [his] staunchest supporters in the last election would [he] have looked into the basis for Sergeant Bridges' recommendation of termination rather than just more or less accepting it," Guider replied, "I might have." J.A. at 140.

Sowards has presented sufficient evidence upon which a reasonable juror could conclude that Guider's decision to terminate her employment was substantially motivated by her protected First Amendment associational rights.  Guider admitted that he might have treated her termination case differently if she had been one of his political supporters.  Although defendants respond that Guider also asserted that he

others, and to admit persons having business with the prisoner.  *See* TENN. CODE ANN. §§ 41-4-104, 41-4-105, 41-4-106, 41-4-108, 41-4-109, 41-4-111, 41-4-114 (1997).

Defendants argue that these statutory duties require discretion in the day-to-day operation of the jail and have serious consequences with respect to the safety of the prisoners and the public.  Chief Jailer Bridges stated that "As a jailer, Sowards was required to exercise her discretion and judgment in determining whether the inmates needed medical attention, whether any of the inmates was suicidal, and whether any disruptions were likely to arise between the inmates."  J.A. at 247 (Bridges Aff.).  She also was "responsible for exercising [her] discretion and judgment with regard to the admission of visitors and any special requests or requirements by the inmates or their relatives or agents . . . . [and also] for dispensing medication, food, necessary living supplies, and mail."  J.A. at 247.  In addition, she was responsible for "preventing contraband from entering or exiting the facility and for making sure inmates remain secure in the facility."  J.A. at 247.  Bridges also stated that at certain times only two jailers are on duty, without any direct supervision at the jail facility, and that he relies on them to carry out their duties to avoid any danger to the inmates or the visiting public.  Defendants argue that the position of a jailer involves especially serious consequences because a jailer could violate the civil rights of the prisoners and the visiting public, and the sheriff is civilly liable for the acts of a jailer. Therefore, they argue that a jailer's actions could have serious political and legal implications for the sheriff.

Sowards agrees that her responsibilities "included securing the inmates located in the Loudon County jail, looking after their safety, providing medications and other medical necessities for their needs."  J.A. at 91.  She asserts that her position did not, however, "involve any managerial responsibilities, any policy making or involvement in political or policy decisionmaking.  [She] simply followed orders and directives" given by Chief Jailer Bridges and Sheriff Guider.

named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;

Category Four: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

If a particular position falls into one of these categories, then political affiliation is an appropriate consideration for that position and a public employee may be dismissed without violating the First Amendment. *See Hall*, 128 F.3d at 424. A government position is not required, however, to fall neatly within one of the categories to be entitled to the *Elrod-Branti* exception. *See Feeney*, 164 F.3d at 318.

Under Tennessee law, "[t]he sheriff of the county . . . may appoint a jailer, for whose acts the sheriff is civilly responsible." TENN. CODE ANN. § 41-4-101 (1997). Jailers are charged with the following responsibilities: to receive and safely keep convicts on their way to the state or federal penitentiary, to file and keep safe under the sheriff's direction the mittimus or process by which a prisoner is committed or discharged from jail, to determine within their discretion what type of precautions to take for guarding against escape and to prevent the importation of drugs, to provide support, to furnish adequate food and bedding, to enforce cleanliness in the jails, to convey letters from prisoners to their counsel and

did not take Sowards's association with her husband or his political campaign into account in deciding to terminate her employment, Guider made conflicting statements regarding his treatment of Sowards's case. Thus, a genuine issue of material fact exists regarding his true motivation for terminating her employment.

Moreover, other evidence also supports Sowards's claim that Guider's decision to terminate her was substantially motivated by her protected conduct. Prior to her termination, Sowards had never been disciplined for missing a warrant. Guider admitted that Sowards had been a dependable employee and had never been involved in any serious disciplinary action. Bridges acknowledged that her job performance over the years was a positive factor on her behalf. However, Bridges stated that he decided to recommend termination because the warrant Sowards missed had been outstanding for a long time and involved a serious crime. Even though Sowards explained that she had looked for the wrong name, Bridges stated that she could have looked up the records to find the correct name, and he did not treat her mistake more leniently because a misunderstanding was involved. Bridges also admitted that other LCSD officers had missed mittimuses,[3] but had never been fired for that omission despite their obligation to check for both outstanding warrants and mittimuses, which are located in the same box. Because there is evidence that she was treated differently than other officers who had made similar mistakes and that she was terminated based on only one mistake, Sowards has provided sufficient evidence that her association with her husband substantially motivated Guider to terminate her.

---

[3]Like a warrant, a mittimus is a written order from a court or magistrate "directed to the sheriff or other officer, commanding him to convey to the prison the person named therein, and to the jailer, commanding him to receive and safely keep such person until he shall be delivered by due course of law." BLACK'S LAW DICTIONARY 1002 (6th ed. 1990).

Defendants have not presented sufficient evidence that Guider would have terminated Sowards on the basis of this one mistake in the absence of her protected association. They argue that Guider did not know that Sowards had supported her husband in his political campaign for sheriff and thus could not have made any decisions on this basis. *See Hall v. Tollett*, 128 F.3d 418, 426-27 (6th Cir. 1997) (dismissing plaintiffs' political retaliation claims because of lack of evidence that a newly elected sheriff had any knowledge of which candidate plaintiffs had actually supported in the election). Guider claims that Sowards told him she was planning on supporting his candidacy rather than her husband's. Sowards denies making this statement. Furthermore, Guider admitted "[b]ut in my mind, you know, I felt confident that she would support her husband." J.A. at 146. Unlike the sheriff in *Hall,* Guider actually spoke with Sowards and "felt confident" that she would support her husband's campaign. Defendants also argue that Guider could not have known of Sowards's political affiliation because Sowards admitted she was not politically active at work and had not given money to any campaigns. A rational juror could conclude, however, that Guider knew Sowards had supported her husband on the basis of Guider's deposition statement describing his conversation with her and his conclusion that she would support her husband.

Viewing the evidence in the light most favorable to Sowards, we conclude that a genuine issue of material fact exists whether Sowards's termination was substantially motivated by her protected associational freedoms. Therefore, the district court erred in granting defendants' motion for summary judgment.

## B. Elrod/Branti Exception

Loudon County and Guider argue that even if Sowards is able to show that she was fired because of her political association with her husband, political affiliation is an appropriate consideration for the employment or termination

of a jailer. Whether political affiliation is an appropriate consideration for a government position is a question of law. *See Mumford v. Basinski,* 105 F.3d 264, 271 (6th Cir.), *cert. denied*, 118 S. Ct. 298 (1997). The "issue on summary judgment is whether Defendants have established that no genuine factual issue exists as to whether political affiliation may appropriately be considered with respect to the position in question." *Feeney v. Shipley*, 164 F.3d 311, 314 (6th Cir. 1999) (quotation omitted).

In *Elrod v. Burns*, 427 U.S. 347, 367 (1976), the Supreme Court established the principle that certain public employees in confidential and policymaking positions may be dismissed on the basis of their political affiliation without violating the First Amendment. The Supreme Court reaffirmed this holding in *Branti v. Finkel*, 445 U.S. 507, 518 (1980), stating that "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." In this analysis, we "must look beyond the mere job title and examine the actual duties of the specific position." *Hall v. Tollett*, 128 F.3d 418, 423 (6th Cir. 1997). It is "the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office" that must be analyzed. *Williams v. City of River Rouge*, 909 F.2d 151, 154 (6th Cir. 1990). In *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996), we identified four categories of positions which should fall under the *Elrod-Branti* exception with reasonable certainty:

Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not