Jeff CHANCE; Dennis Bruner,
Plaintiffs–Appellants,

v.

MAHONING COUNTY, Ohio Sheriff's
Department; Randall Wellington, In-
dividually and as Sheriff of Mahoning
County, Ohio; Michael Budd, Individ-
ually and as Deputy Sheriff of Mahon-
ing County, Ohio, Defendants–Appel-
lees.

No. 03–3017.

United States Court of Appeals,
Sixth Circuit.

June 22, 2004.

David K. Schaffner, John P. Maxwell, Hardin & Schaffner, New Philadelphia, OH, for Plaintiffs–Appellants.

Jeffrey A. Stankunas, Isaac, Brant, Ledman & Teetor, Columbus, OH, for Defendants–Appellees.

Before: RYAN, DAUGHTREY, and CLAY, Circuit Judges.

RYAN, Circuit Judge.

The plaintiffs, Jeff Chance and Dennis Bruner, filed suit under 42 U.S.C. § 1983, alleging that the defendants terminated them from their employment and treated them in a discriminatory manner for exercising their First Amendment rights of political association and free speech. The plaintiffs also brought state law causes of action for defamation and intentional infliction of emotional distress (IIED). The district court granted summary judgment in favor of the defendants on all claims and the plaintiffs appealed.

In their brief to this court, the plaintiffs do not address the district court's disposition of their state law defamation claims. Accordingly, those claims are waived. *See Robinson v. Jones,* 142 F.3d 905, 906 (6th Cir.1998). The only issues remaining before this court relate to the plaintiffs' § 1983 and IIED claims. We must determine (1) whether the plaintiffs' pending union grievances tolled the statute of limitations in their § 1983 actions, (2) whether there was a genuine issue of material fact about whether the defendants retaliated against the plaintiffs, and (3) whether the district court abused its discretion in granting summary judgment *sua sponte* dismissing the plaintiffs' state law IIED claims.

For the following reasons, we affirm the district court's order granting summary judgment on the plaintiffs'.§ 1983 claims. The district court's order granting summary judgment on the plaintiffs' state law IIED claims is reversed and the case is remanded.

## I.

Jeff Chance and Dennis Bruner, former Mahoning County deputy sheriffs, allege that the defendants retaliated against them for their support of former sheriff Phil Chance. Phil Chance, Jeff Chance's brother, was sheriff of Mahoning County from 1996 to 1999. He resigned after being convicted on federal criminal charges.

Following Phil Chance's resignation, the Mahoning County Commissioners appointed as the new sheriff defendant Randall Wellington, who had been Phil Chance's opponent in the general election. Upon his appointment, Wellington elevated defendant Michael Budd, one of his campaign supporters, to the rank of Major, a supervisory position within the Sheriff's Department.

### Jeff Chance

On October 27, 1999, Sheriff Wellington fired Jeff Chance for dishonesty and gross misconduct after Chance pleaded guilty to two misdemeanor counts of falsification misleading a public official. However, Chance was reinstated on June 22, 2001, after a state court affirmed an arbitrator's ruling in his favor. Following Chance's reinstatement, the defendants took a number of disciplinary actions against him. First, Sheriff Wellington demoted Chance from the rank of corporal to deputy. Wellington also prohibited Chance from obtaining extra employment in the "cops in shops" program, under which off-duty deputies are permitted to earn extra money as security guards in private businesses. Finally, Wellington and Budd prevented Chance from exercising his seniority bidding rights in choosing his daily assignments. On January 15, 2002, after filing this lawsuit, Jeff Chance resigned from the Sheriff's Department because he had "had enough."

### Dennis Bruner

Dennis Bruner worked in the Major Crimes Unit of the Mahoning County Sheriff's Department under the supervision of Jeff Chance. While serving in that capacity, Bruner testified at the criminal trial of former sheriff Phil Chance. After the trial, when Wellington was appointed sheriff, Bruner was transferred from the Major Crimes Unit to the jail. On September 29, 1999, Sheriff Wellington fired Bruner, purportedly because Bruner had been served with a civil protection order (CPO) that prohibited him from carrying a gun.

Following Bruner's termination, Sheriff Wellington received two complaints from Bruner's ex-wife, claiming that Mahoning County deputies were appearing at her residence and taking Bruner's side in the couple's child custody dispute. Sheriff Wellington ordered the deputies to stop responding to calls from Mrs. Bruner's residence and to become involved only upon an official request for assistance from the Boardman, Ohio, Police Department, which had primary jurisdiction over the matter.

In September 2000, the Ohio Court of Appeals lifted the CPO against Bruner due to a lack of evidence. Within a week, the Sheriff's Department reinstated him. After his reinstatement, Bruner received two reprimands in a five-and-a-half-month period, relating to his personal appearance.

### Proceedings in the District Court

On December 20, 2001, Chance and Bruner filed this lawsuit under § 1983, alleging that the defendants terminated them from their employment and treated them in a discriminatory manner in retaliation for exercising their First Amendment rights of political association and free speech. The plaintiffs also brought state law causes of action for defamation and intentional infliction of emotional distress (IIED). The district court granted summary judgment in favor of the defendants on the plaintiffs' federal claims because they were either barred by the statute of limitations or there was insufficient evidence to establish a *prima facie* case of retaliation.

The court also granted summary judgment on the plaintiffs' state law defamation claims because they were either barred by the statute of limitations or the alleged defamatory statements were truthful.

Finally, the district court granted summary judgment in favor of the defendants on the plaintiffs' state law claims of IIED because the plaintiffs had not alleged that they had suffered a severe and debilitating psychic injury. In granting the defendants' motion for summary judgment on

this claim, the district court noted that although the defendants had not enumerated the grounds supporting summary judgment, it would nevertheless exercise its discretion to grant summary judgment *sua sponte.*

## II.

This court reviews a district court's decision to grant summary judgment *de novo. Sowards v. Loudon County, Tenn.,* 203 F.3d 426, 431 (6th Cir.2000). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III.

■ We first consider whether any of the plaintiffs' § 1983 claims are barred by the statute of limitations. In Ohio, the appropriate limitations period for civil rights actions brought under § 1983 is two years. Ohio Rev.Code. Ann. § 2305.10; *Browning v. Pendleton,* 869 F.2d 989, 992 (6th Cir.1989) (*en banc*). Bruner and Chance filed their lawsuit on December 20, 2001, more than two years after they were fired on September 29, 1999, and October 27, 1999, respectively. Accordingly, their § 1983 claims relating to their terminations are time-barred. Similarly, because Bruner was transferred to the jail prior to his termination, the § 1983 claim relating to this alleged injury is also time-barred. Contrary to the plaintiffs' arguments, there is no basis for tolling the statute of limitations in this case due to the plaintiffs' pending union grievances. It is well settled in this circuit that union grievance procedures, such as those employed by the plaintiffs in this case, do not toll the statute of limitations. *Kessler v. Bd. of Regents,* 738 F.2d 751, 754 (6th Cir.1984).

## IV.

We next consider whether summary judgment was proper in the remaining § 1983 claims, in which the plaintiffs allege numerous acts of retaliation. In order for a plaintiff to establish that he was retaliated against for engaging in a constitutionally protected activity, he must show (1) that he was engaged in protected conduct, (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in such conduct, and (3) that the adverse action was motivated at least in part by his protected conduct. *Sowards,* 203 F.3d at 431. If the plaintiff carries his burden under this test, the burden then shifts to the defendant to show, by a preponderance of the evidence, that the adverse action would have been taken absent the protected activity. *Id.*

Chance contends that there is a genuine issue of material fact about whether the defendants retaliated against him for exercising his constitutional rights of political association and free speech. Specifically, Chance claims that the defendants retaliated against him by terminating him from his employment, demoting him upon his reinstatement, preventing him from exercising his seniority bidding rights, and prohibiting him from participating in the "cops in shops" program.

■ As explained above, any claim relating to Chance's termination is barred by the statute of limitations. With respect to the remaining allegations, even assuming that Chance has made out a *prima facie* case of retaliation, the defendants have successfully shown that the adverse actions would have been taken absent the protected activity. First, Chance's demotion was a legitimate form of discipline that was applied, in accordance with the procedures contained in the collective bargaining agreement, because Chance had

pleaded guilty to two misdemeanor counts of falsification. Second, Chance was prevented from exercising his seniority bidding rights because he was under investigation for threatening his coworkers and department policy required that he be assigned to one area. Finally, the defendants prohibited Chance from working in the "cops in shops" program because his misdemeanor convictions for falsification compromised his ability to testify as a witness in the prosecution of any arrest that he would have made. We are satisfied that there is no genuine issue of material fact about whether the defendants would have taken these adverse actions against Chance absent his protected conduct. Thus, the district court correctly granted summary judgment on Chance's retaliation claim.

## V.

Like Chance, Bruner contends that he has presented sufficient evidence to survive summary judgment on his retaliation claim. Specifically, Bruner alleges that the defendants took three adverse actions against him in retaliation for his support of former sheriff Phil Chance. As stated above, Bruner's first claim, which relates to his termination, is barred by the statute of limitations.

■ Bruner's second allegation is that the defendants retaliated against him by ordering sheriff's deputies not to interfere in the child custody dispute between him and his ex-wife. Bruner's ex-wife lived in Boardman, Ohio, a small town in Mahoning County that had its own police department. When Sheriff Wellington learned that Mahoning County sheriff's deputies had become involved in the Bruners' custody dispute, he issued an order prohibiting the deputies from responding to calls from Mrs. Bruner's residence unless the Boardman Police Department made a request for assistance through official channels.

By all appearances, this order was a legitimate exercise of Sheriff Wellington's authority that was designed to prevent his deputies from abusing their official authority in a personal matter outside of their jurisdiction.

■ Finally, Bruner alleges that the defendants retaliated against him by reprimanding him twice within a five-and-a-half-month period for his personal appearance. There is no evidence that these reprimands would have deterred a person of ordinary firmness from continuing to engage in protected conduct. There was no disciplinary action taken against Bruner and the reprimands would have been purged from his personnel file within six months; nor is there sufficient evidence of a causal connection between the reprimands and Bruner's testimony at Phil Chance's trial. The reprimands were issued by Lieutenant Mark Masto and Corporal Mickey Yurco, who are not parties to this litigation. The only evidence of the defendants' involvement in the reprimands is Bruner's unsupported speculation. Accordingly, the district court properly granted summary judgment in favor of the defendants on Bruner's § 1983 claim of retaliation.

## VI.

Finally, we consider whether the district court properly granted summary judgment on the plaintiffs' state law IIED claims in light of the fact that the defendants did not enumerate the grounds supporting their motion for summary judgment on this issue. At the outset, we note that

a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion.' " *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir.2000) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir.2000)).

Alternatively, the district court may grant summary judgment *sua sponte* if the losing party is put on notice beforehand that it must come forward with all of its evidence. *Celotex*, 477 U.S. at 326. If a district court enters summary judgment *sua sponte*, and without notice, the district court's action is subject to two different standards of review. "The substance of the district court's decision must of course meet the normal standards for summary judgment. However, the procedural decision to enter summary judgment *sua sponte* must also be reviewed to determine if the court abused its discretion by entering the judgment on its own motion." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). The granting of summary judgment *sua sponte* is a practice that is discouraged in the Sixth Circuit, "particularly . . . when the court does not give advance notice of the potential action to the adversely affected party." *Id.*

The defendants did not carry their initial burden of informing the district court of the basis for granting summary judgment on the plaintiffs' IIED claims. While the defendants asked for summary judgment on all of the plaintiffs' claims, their motion was limited to a discussion of the plaintiffs' § 1983 and defamation claims. Insofar as the defendants moved for summary judg-

ment on the plaintiffs' IIED claims, they did not inform the district court of the basis for their motion, or identify those portions of the record which they believed demonstrated the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Because the defendants did not bear this initial burden, the plaintiffs were not required to produce anything to oppose the motion, even though the plaintiffs had the ultimate burden of persuasion.

Although the district court was aware that the defendants had not properly supported their motion, it nevertheless granted summary judgment in their favor *sua sponte*. The court held that the plaintiffs had failed to plead an essential element of their IIED claims, namely, that they suffered a debilitating emotional injury. As the district court noted, in order to sustain a claim of IIED in Ohio, a plaintiff must allege that the defendant intentionally or recklessly caused severe emotional distress through extreme and outrageous conduct. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (Ohio 1983). "Serious emotional distress requires an emotional injury which is both severe and debilitating." *Burkes v. Stidham*, 107 Ohio App.3d 363, 668 N.E.2d 982, 989 (Ohio Ct.App.1995). Because the complaint did not state that the plaintiffs suffered from a debilitating emotional injury, the district court granted summary judgment in favor of the defendants.

■ While the district court's interpretation of Ohio law may have been entirely correct, its decision to award summary judgment, *sua sponte*, was an abuse of discretion because it did not put the plaintiffs on notice beforehand that they must come forward with evidence to support their IIED claims. Accordingly, we are not able to conduct a meaningful review of the record to determine whether there was

a genuine issue of material fact as to the plaintiffs' claims that they suffered from severe and debilitating emotional injuries. As we stated in *Wausau:*

> Courts of Appeal are courts of review. It would normally be impossible to determine whether there is a disputed issue of material fact when a party has not had the chance to develop the record below. This would force an appeals court to serve as a sounding board for facts not properly in the record, simply because a party never had a chance to develop them.

*Wausau,* 69 F.3d at 105. Because the district court did not give the plaintiffs an opportunity to develop the record with respect to their IIED claims, it abused its discretion in granting summary judgment *sua sponte.*

### VII.

For the foregoing reasons, the district court's order granting summary judgment in favor of the defendants on the plaintiffs' § 1983 claims is **AFFIRMED**. The award of summary judgment on the plaintiffs' state law IIED claims is **REVERSED** and the case is **REMANDED** to the district court with instructions either to exercise its discretion to dismiss the supplemental state law claims without prejudice under 28 U.S.C. § 1367(c)(3) or to give notice to the plaintiffs that it is considering granting summary judgment *sua sponte* and that they must come forward with all of the available evidence in support of their IIED claims.