RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

STEVEN L. SIMASKO,

*Plaintiff-Appellee,*

*v.*

No. 04-2292

COUNTY OF ST. CLAIR, a Municipal Corporation,

*Defendant,*

PETER R. GEORGE, individually and in his official
capacity as St. Clair County Prosecutor; MARY ROY
KELLY, jointly and severally,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-73145—Bernard A. Friedman, District Judge.

Argued: April 19, 2005

Decided and Filed: August 3, 2005

Before: BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** William L. Fealko, FLETCHER CLARK TOMLINSON FEALKO & MONAGHAN,
P.C., Port Huron, Michigan, for Appellants. Kathleen L. Bogas, EISENBERG & BOGAS, P.C.,
Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** William L. Fealko, Gary A. Fletcher,
FLETCHER CLARK TOMLINSON FEALKO & MONAGHAN, P.C., Port Huron, Michigan, for
Appellants. Kathleen L. Bogas, EISENBERG & BOGAS, P.C., Bloomfield Hills, Michigan, for
Appellee.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge. The defendants appeal the district court's denial of their motion
for summary judgment based on a defense of qualified immunity in this 42 U.S.C. § 1983 action.
Because the defendants' actions in this case did not violate the Constitution, the denial of summary
judgment is reversed.

## I. Background

The plaintiff, Steven Simasko, worked for eighteen years as an assistant prosecutor for St. Clair County, Michigan. During all times relevant to this case, defendant Peter George was the county attorney for St. Clair County and defendant Mary Kelly was the chief assistant prosecutor, appointed by Peter George. As the chief assistant prosecutor, Kelly was Simasko's co-worker and immediate supervisor.

In 2002, Simasko and Kelly both announced their intention to run for a judicial vacancy in the 72nd Michigan Judicial District Court in St. Clair County. George supported Kelly in the race. After the primary, Kelly was one of the top-two vote getters, while Simasko was not. Upon learning of Simasko's defeat, Kelly telephoned Simasko and asked if he would publicly support her in the election. Kelly testified that Simasko answered "something to the effect he didn't have a dog in the race, he was just tired and he just needed to sit back and not do anything." Kelly asked Simasko for his support a second time, this time at the office. During this second solicitation, Kelly informed Simasko that she was displeased with his brother's support of her opponent in the election. Simasko claims that Kelly told him that if his brother continued to support her opponent, she would expect Simasko to support her campaign publicly. Simasko also claims that Kelly asked "does he [Simasko's brother] realize what's going to happen to his practice?" Simasko's brother is an attorney with a local practice in St. Clair County. In response, Simasko again told Kelly that he did not wish to support either candidate in the race. As Kelly left Simasko's office, Simasko claims that Kelly told him "this won't be a nice place for you to work."

Simasko was later approached by another co-worker, Senior Assistant Prosecutor Joe McCarthy, about the Kelly campaign. McCarthy allegedly told Simasko that he needed to curtail his brother's support of Kelly's campaign, reminded Simasko that Kelly was his supervisor, and asked whether Simasko's brother knew the ramifications of his actions. Simasko again reiterated that he did not wish to take a position in the election.

In November of 2002, Kelly learned that she had lost the election for district court judge to her opponent. After learning of this loss, Kelly told a group of people that "that fucking Simasko is done."

On December 4, 2002, Simasko met with Kelly and George, the County Attorney, for an annual performance evaluation. Simasko claims that this was the first occasion in his eighteen years of working at the office that he had been subjected to a substantive performance evaluation. During the evaluation, George and Kelly complained that they were unhappy with Simasko's performance on several cases that year.[1] Soon thereafter, Simasko was told by George that he was "strongly considering" demoting him and decreasing his salary by approximately $20,000. Simasko claims that, after learning of the possible demotion, he wrote to George and informed him that, should George decide to go through with the demotion, Simasko would treat the action as a constructive discharge pursuant to a collective bargaining agreement between the parties. In response, George informed Simasko that he did intend to go through with the demotion. Simasko then wrote a second letter to George, again stating that Simasko found the pay decrease to be unacceptable and that he was treating the action as a constructive discharge. Simasko subsequently resigned from his position with the county.

---

[1] Although both Simasko's and the defendants' briefs go into great detail about whether Simasko's alleged mishandling of cases resulted in his demotion, such an inquiry is unnecessary since, for purposes of this appeal, we must take Simasko's version of the facts as true—i.e., that he was fired as a result of his refusal to support Kelly's campaign and as a result of his brother's support of Kelly's opponent.

After resigning from his position, Simasko brought suit pursuant to 42 U.S.C. § 1983, alleging that he was constructively discharged in retaliation for the exercise of his First Amendment rights of free speech and association. The defendants claim that they were entitled to fire Simasko based upon his refusal to participate in Kelly's campaign because Simasko is a policymaking employee subject to the *Elrod/Branti* exception, which allows public employees in policymaking positions to be fired for their political or policy views without violating the First Amendment. *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980). The district court, however, found that the *Elrod/Branti* exception did not apply "in this particular case, to this particular plaintiff" because Simasko did not engage in "any overt speech or political activity," but rather simply refused to act or support a particular candidate. The district court accordingly denied the defendants' motion for summary judgment based on a defense of qualified immunity.

## II.  Analysis

The defendants' actions leading to Simasko's termination did not violate the Constitution; thus, the defendants are entitled to qualified immunity and the denial of summary judgment is reversed.

The doctrine of qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A denial of summary judgment based on a determination that the defendant is not entitled to qualified immunity may be reviewed on interlocutory appeal. *Solomon v. Auburn Hills Police Dept.,* 389 F.3d 167, 172 (6th Cir. 2004). Because the availability of qualified immunity is a legal question, the decision of the district court is reviewed *de novo. Id.* (citation omitted). "[T]o the extent that there is disagreement about the facts . . . we must review the evidence in the light most favorable to the Plaintiffs, taking all inferences in their favor." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

In determining whether a grant of qualified immunity is proper, we determine first whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this case, the defendants' actions did not violate the Constitution, and accordingly we need not reach the remaining elements of the test for qualified immunity.

Simasko was allegedly fired for refusing to support the campaign of his supervisor for a district court judgeship, and for refusing to try to curtail his brother's public support of his supervisor's opponent in the election. Because Simasko's job as an assistant county attorney qualified as a policymaking position subject to the *Elrod/Branti* exception, he could be fired for his political or policy views without violating the First Amendment. Accordingly, the defendants are entitled to qualified immunity.

## A.  Simasko's Decision to Remain Neutral in the Campaign

The defendants' constructive discharge of Simasko based on his decision to remain neutral in Kelly's campaign for judge, however misguided and vindictive that action may have been, did not violate the Constitution. While the First Amendment prohibits the politically-motivated dismissal of many governmental employees, the Supreme Court recognized in *Elrod,* 427 U.S. at 367-68 (1976) (plurality opinion), and in *Branti*, 445 U.S. at 517-18 (1980), that public employees in "policymaking or confidential positions" may be terminated for politically-motivated reasons without violating the First Amendment. The *Elrod/Branti* exception applies not only to discharges based on political affiliation, but also to terminations based on actual speech. *See Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002). Furthermore, the *Elrod/Branti* exception has been interpreted

to permit a hiring authority to terminate a policymaking or confidential employee based on "political differences of any kind." *Williams v. City of River Rouge*, 909 F.2d 151, 153 n.4 (6th Cir. 1990).

In this case, Simasko was employed in a policymaking or confidential position. In *Branti*, the Court elaborated on the "policymaking or confidential" requirement, stating that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518. In *Monks v. Marlinga*, 923 F.2d 423, 426 (6th Cir. 1991), we held that an assistant county prosecutor is properly considered a policymaking or confidential employee under Michigan law and that political affiliation is an appropriate consideration in the discharge of such an employee.

Simasko argues that his termination does not fall within the *Elrod/Branti* exception because he did not actively oppose his supervisor in her race for a district court judgeship, but instead only remained neutral in the election. This argument lacks merit. The government has an important interest in securing employees who will loyally implement the policies of its democratically elected officials. The Supreme Court has found force in the argument that politically loyal employees are necessary "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the . . . administration, policies presumably sanctioned by the electorate." *Elrod*, 427 U.S. at 367 (plurality opinion). Our court, moreover, has indicated that "the government's interest in appointing politically loyal employees to certain positions converges with its interest in operating an efficient workplace when dealing with policymaking employees because loyalty by those employees is an essential requirement for the efficient functioning of the workplace." *Rose*, 291 F.3d at 923. In this case, George supported Kelly, Simasko's supervisor, in her campaign for a district court judgeship. Simasko's decision not to support George's choice for the district court judgeship election was sufficient to implicate loyalty concerns that could have caused George to lose confidence in Simasko. As we recognized in *Latham v. Office of Att'y Gen. of State of Ohio*, 395 F.3d 261, 266-67 (6th Cir. 2005), the mere fact that an employee is affiliated with an opposing political party, however quietly, can cause the employer not to trust the employee to implement fully the employer's practices. Accordingly, because Simasko was a policymaking or confidential employee, the defendants' constructive discharge of Simasko based on his failure to support Kelly's campaign did not violate the Constitution.

This conclusion is supported by the Seventh Circuit's holding in *Dimmig v. Wahl*, 983 F.2d 86 (7th Cir. 1993). In that case, a probationary deputy sheriff was fired after he refused to comply with a policy requiring all probationary employees to participate in the sheriff's campaign for re-election. *Id.* at 86. The deputy sheriff filed suit alleging that the termination, and the policy itself, violated his First Amendment rights. *Id.* Although the court had previously held that a deputy sheriff was properly labeled a policymaking or confidential employee, the deputy argued that political neutrality was not a proper basis for his termination because it "did not affect his loyalty or ability to enforce the law . . . as his employer saw fit." *Id.* at 87. The court rejected the deputy's argument, however, and held that, because the sheriff used "political considerations in deciding that [the deputy's] refusal to campaign on his behalf could hinder the effective performance of the department," the termination did not violate the Constitution. *Id. See also Mitchell v. Thompson,* 18 F.3d 425, 426-27 (7th Cir. 1994) (holding that defendants were entitled to qualified immunity for demoting deputy sheriff based on his decision to remain neutral during the sheriff's re-election campaign).

While this court has recognized that terminating employees based solely on their political beliefs may seem "draconian at first glance," such a result is less troubling when one recalls that, pursuant to the *Elrod/Branti* exception, a policymaking employee can be fired simply for supporting a political party different from that of his employer, even if that employee never evidences any policy disagreement with his employer. *Latham*, 395 F.3d at 266-67; *see also Williams*, 909 F.2d

at 153 n.4 (stating that the reasoning for the *Elrod/Branti* exception has been "understood to apply to political differences of any kind"). The defendants' actions leading to the termination of Simasko based on his decision to remain neutral in Kelly's campaign for judge did not violate the First Amendment, and the defendants are entitled to qualified immunity on that claim.

### B. Simasko's Failure to Prohibit His Brother's Support of Kelly's Opponent

Simasko also claims that his constructive discharge was a result of his brother's public support for Kelly's opponent in the judicial race, in violation of Simasko's First Amendment right to freedom of association. This contention fails upon close examination of the nature of the claim. Simasko does not claim that he was fired because he and his brother were brothers, something obviously not within Simasko's power to change. Instead, the claim is perforce that Simasko was fired because of his brotherly association with a supporter of Kelly's opponent. To the extent that this claim implicates Simasko's First Amendment rights (as opposed to those of his brother), the claim is properly characterized as one based on Simasko's association (perhaps even a refusal to break off an association) with the supporter of a political opponent. Such an association is covered by the *Elrod/Branti* exception.

In *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000), this court indicated, albeit in dictum, that the *Elrod/Branti* exception permits hiring authorities to terminate policymaking or confidential employees for their association with political opponents without violating the First Amendment. In *Sowards*, a jailer alleged that she was terminated after her husband ran and lost the election for sheriff of the county, and that the termination violated her First Amendment rights to intimate and political association. *Id.* at 432. The defendants in the case claimed that, even if the jailer were able to show that she was fired because of her political association with her husband, the termination was justified because the position of jailer should be considered a policymaking position for which political affiliation is an appropriate consideration. *Id.* at 435. Although the court found that the position of jailer was not a policymaking position, *id.* at 438, we indicated that if an employee *is* in a policymaking position, "then political affiliation is an appropriate consideration for that position and a public employee may be dismissed without violating the First Amendment." *Id.* at 436. Accordingly, because Simasko is a policymaking employee, the defendants' constructive discharge of Simasko based on Simako's affiliation with his brother's political activities did not violate the Constitution.

Furthermore, Simasko's termination was based not just on his affiliation with his brother, but also on Simasko's failure even to *attempt* to curtail his brother's public support of Kelly's opponent in the campaign. The failure of Simasko to comply with the political wishes of Kelly, his supervisor, and his failure to try to prevent his brother from supporting a candidate opposed by George could have caused George to question Simasko's loyalty and, pursuant to the *Elrod/Branti* exception, was a valid reason for which to terminate Simasko. Accordingly, there was no constitutional violation in this case.

### III. Conclusion

The defendants did not violate the Constitution by constructively discharging Simasko based either on his decision to remain neutral in his supervisor's campaign, or based on Simasko's failure to attempt to curtail his brother's support of his supervisor's opponent. The defendants are accordingly entitled to qualified immunity and the denial of summary judgment is REVERSED.