958 F.2d 372
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John A. PICHA, Plaintiff-Appellant,
v.
CITY OF PARMA; Michael A. Ries, in his capacity as Mayor of
Parma, and in his individual capacity; Martin E. Vittardi,
in his position as Parma Service Director, and in his
individual capacity, Defendants-Appellees.
 No. 91-3501.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff, a former city employee, appeals the district court's grant of summary judgment against his claim that the defendants violated his First Amendment rights by terminating him because of his political activities. The district court held that the plaintiff had failed to establish a genuine issue as to the officials' motives and that the individual defendants were entitled to qualified immunity. We reverse and remand.
 
 I.
 
 2
 The plaintiff, John Picha, was Chief Inspector of the city of Parma, Ohio, until that position was abolished at the end of 1988. Picha had worked for the city for 17 years, the first 16 years under the administration of former Mayor John Petruska and the last year under one of the defendants, Mayor Michael Ries. At the time of his termination, the city's inspection staff consisted of Picha and several part-time inspectors. Picha's job evaluations had been uniformly favorable.
 
 
 3
 In 1987, then-Councilmember Ries ran against Mayor Petruska in the Democratic mayoral primary. Picha openly supported Petruska's candidacy by displaying Petruska signs on his front lawn and on his car. He also helped make signs for the Petruska campaign and attended campaign functions and organizational meetings.
 
 
 4
 In March 1987, Ries defeated Petruska in the Democratic primary. Ries ultimately won the general election. In August 1987, Mayor-elect Ries asked the City Tax Commissioner, Richard Leirer, to become the purchasing and personnel director in the new administration. After Leirer accepted the offer, Ries asked Leirer about ways to terminate Picha's employment. Leier responded that Picha, a classified employee, could be terminated through reorganization, declassification, or abolishment. Leirer stated in an affidavit that he had a clear understanding that Picha was on the mayor-elect's "hit list."
 
 
 5
 The Mayor-elect discussed the possibility of hiring private firms to conduct the city's inspections with several inspection firms. After taking office, Mayor Ries introduced a proposal to hire Quality Control Inspections, Inc. (QCI), to replace the city's inspection program. Ries told the city council that contracting inspections privately would save money and avoid legal liability.
 
 
 6
 Some councilmembers expressed concern about terminating Picha. According to Councilmember Linda Cross, Ries and Service Director Martin Vittardi repeatedly assured the council that Picha would be given other city employment. A majority of the council voted for Mayor Ries' proposal. Cross stated that she voted for the plan only because she had received assurances that Picha would be given other employment.
 
 
 7
 On December 31, 1988, the city's inspection program was abolished. Responsibility for city inspections passed to QCI and two other private firms. In 1989, Rick Capone, the president of QCI, made a $1,000 campaign donation to Mayor Ries. Capone's wife made a smaller donation. There is no evidence of similar donations from officials of the other private inspection firms. After the new contracts were awarded, Picha was terminated. Vittardi had advised Picha of his impending termination in late 1988. Picha was not offered other employment with the city. Picha attempted to utilize the city's displacement procedures to obtain another city job, but that attempt proved fruitless.
 
 
 8
 Picha filed this suit against Ries, Vittardi, and the city in December 1989. His complaint alleged that he had been terminated for his political activities, in violation of the First Amendment. Picha requested declaratory and equitable relief, damages, and an opportunity to utilize the displacement procedures to obtain another city job.
 
 
 9
 The defendants moved for summary judgment, contending that Ries and Vittardi were protected by qualified immunity and that Picha had failed to establish a genuine issue of fact as to the reason for his termination. In his deposition, Ries maintained that he favored abolishing the city inspector position because he had received complaints about the poor quality of Picha's work and because the change would save money. Ries also stated that he had been unaware of Picha's support for Petruska. Vittardi also stated that he had received complaints about Picha's work.
 
 
 10
 The district court referred the motion to a magistrate. The magistrate reported that there appeared to be a genuine issue of material fact as to whether Picha had been terminated for political reasons. The magistrate recommended, therefore, that summary judgment be denied.
 
 
 11
 The district court granted summary judgment to the defendants four months later. The court first held that Ries and Vittardi were entitled to qualified immunity. Next, the court granted summary judgment in favor of all the defendants because Picha had failed to establish a genuine issue as to the reason for his termination. Accordingly, the court dismissed the entire action. This appeal followed.
 
 II.
 
 12
 Picha first argues that the district court erred in granting summary judgment to the defendants. We review a district court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1989).
 
 
 13
 A court must render summary judgment if the pleadings, affidavits, and fruits of discovery on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has explained that
 
 
 14
 the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 15
 Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute about a material fact is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making that determination, a court must draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 16
 Although an issue involving a person's state of mind is "not necessarily inappropriate" for summary judgment, Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989), "state of mind is typically not a proper issue for resolution on summary judgment." Wilson v. Seiter, 893 F.2d 861, 866 (6th Cir.1990), vacated on other grounds, --- U.S. ----, 111 S.Ct. 2321 (1991). In cases in which state of mind is an issue, it is often difficult or impossible for a plaintiff to obtain direct evidence of a defendant's knowledge, motive, or intent. Instead, the plaintiff usually must rely on circumstantial evidence and reasonable inferences drawn from the defendant's conduct. Therefore, summary judgment on a state of mind issue is usually appropriate only if the non-moving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990) (upholding summary judgment).
 
 
 17
 Picha claims that he was terminated because of his protected First Amendment activities. Picha's burden at trial would be to "show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'--or, to put it in other words, that it was a 'motivating factor' " in the defendants' decision to terminate him. Mount Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (footnote and citation omitted).
 
 
 18
 Once Picha meets that burden, the burden shifts to the defendants to show "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." Id; see also Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 416-17 (1979).
 
 
 19
 The district court concluded that Picha had failed to establish a genuine issue as to whether his protected conduct was a motivating factor in his termination. The court held that a reasonable jury could not find that Ries knew of Picha's political activities or that those activities motivated Ries' actions. We examine these two holdings separately.
 
 A.
 
 20
 Picha attempted to establish Ries' knowledge of his political activities in two ways. First, he submitted affidavits from city officials to show that his activities on behalf of Petruska were well known. Councilmember Cross stated that it was "widely known" that Picha was a "strong supporter" of former Mayor Petruska. Former City Engineer Russell Reinke stated that he knew, and "it was widely known that Picha was a very active supporter of former mayor Petruska." Richard Leirer, who had accepted a job offer from Ries, stated that "[i]t was a common understanding that John Picha was clearly affiliated with the prior administration and it was also apparent that John Picha had engaged in campaign activities for former Mayor John Petruska." Picha's affidavit states that he had campaigned actively for Petruska several times over the years, had attended all of Petruska's campaign parties and several organizational meetings, and had made signs for the campaign.
 
 
 21
 Second, Picha attempted to establish Ries' personal knowledge directly. Picha's affidavit avers that Ries visited his home at a time when there was a Petruska yard sign on his front lawn and a large Petruska sign on top of his wife's car.
 
 
 22
 The defendants argue, and the district court held, that these affidavits do not establish a genuine issue of fact. The court concluded that the affidavits of Cross, Reinke, and Leirer were based on opinions and beliefs, not facts. The court also found Picha's affidavit to be inadequate because it fails to state that Ries knew that he was visiting Picha's home.
 
 
 23
 While Cross, Reinke, and Leirer are not competent to testify to Ries' subjective state of mind, they may be competent to testify to whether a fact was widely known in the community. Cf. Williams v. Borough of West Chester, 891 F.2d 458, 465 n. 12 (3rd Cir.1989) (deputy competent to testify that arrestee's suicidal tendencies were widely known in police department). Picha's affidavit also may establish a genuine issue of Ries' knowledge. A jury reasonably might infer that Ries knew that Picha lived in the house with the Petruska signs in the yard and on the car. However, we need not decide whether the affidavits are sufficient because the defendants' counsel conceded Ries' knowledge at oral argument.[1]
 
 B.
 
 24
 Picha also attempted to establish that his political activities motivated Ries' actions. Picha's argument primarily relied on the affidavit of Richard Leirer, Ries' designated purchasing and personnel director. Leirer stated that Ries engaged in a "specific discussion ... regarding John Picha and the manner in which his employment could be terminated." Leirer further stated that Ries never discussed dissatisfaction with Picha's work or budgetary considerations as reasons for the termination. Finally, Leirer stated that he had a clear understanding that Picha was on Mayor Ries' "hit list."
 
 
 25
 We find this affidavit sufficient to defeat a motion for summary judgment on the motivation issue. In the absence of an admission from Ries, Picha must use circumstantial evidence that his termination was politically motivated. The testimony from a Ries confidant that Ries asked him to list the ways to terminate Picha is strong circumstantial evidence of an intent to fire Picha through any means possible. This evidence, coupled with the testimony of Leirer, Cross, Reinke, and Picha that Picha's political activities were widely known, would allow a reasonable juror to infer a political motivation for Picha's discharge.
 
 C.
 
 26
 Finally, the district court held that summary judgment would be appropriate even if Picha's proofs amounted to prima facie evidence of a politically motivated discharge. The court stated that Picha's evidence was insufficient to carry his burden to show that the defendants' proffered justifications for his discharge were pretextual.
 
 
 27
 The district court borrowed its analysis from Title VII. See Canita v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 516 (1990). Unlike Title VII, however, the plaintiff in a First Amendment political discharge case does not retain the burden of proof once he or she has shown that the protected conduct was a substantial or motivating factor in the adverse employment decision. Instead, the public employer has the burden to prove, by a preponderance of the evidence, that the same decision would have been made in the absence of the political conduct. Mt. Healthy, 429 U.S. at 287. Therefore, the district court erred by requiring Picha to demonstrate that he could prove that the defendants' stated reasons were pretextual.
 
 
 28
 Since the defendants at trial would carry the burden to prove that Picha was fired for a legitimate reason, summary judgment is appropriate on this issue only if the evidence, viewed favorably to Picha, is so one-sided that the defendants must prevail. Anderson, 477 U.S. at 251-52. The defendants' evidence consists of the depositions of Ries, Vittardi, and City Engineer Dennis Seifert.
 
 
 29
 Vittardi, Ries, and Seifert testified that they had heard complaints about the quality of the city inspection staff's work and that they believed the use of private firms would improve the quality of inspections. Picha's submissions tend to rebut this justification. Former City Engineer Reinke's affidavit states that he never knew of any problem with Picha's work. Richard Leirer stated that Ries did not mention dissatisfaction with the work of Picha and his staff when he asked Leirer about ways to terminate Picha. Finally, Picha's work evaluations were uniformly favorable.
 
 
 30
 Ries and Vittardi also stated that the decision was motivated by cost savings. Seifert, on the other hand, testified that he was not aware that cost was a factor. Reinke's affidavit disputes the claim that the city was losing money. Cross' affidavit states that Picha's salary "was not really an issue" because the city could have passed the cost on to contractors. Leirer's affidavit states that Ries did not mention costs as a factor in his desire to terminate Picha.
 
 
 31
 We find that this evidence is not so one-sided as to entitle the defendants to summary judgment on the issue of legitimate reasons for Picha's termination. Accordingly, we reverse the district court's grant of summary judgment to the defendants.[2]
 
 III.
 
 32
 The district court also held that Ries and Vittardi were entitled to qualified immunity from Picha's claim. The court concluded that, given the legitimate reasons proffered for Picha's termination, a reasonable official could believe that Picha's discharge was lawful.
 
 
 33
 A public official is entitled to qualified immunity unless he or she violates clearly established federal "statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under this objective test, an official will be immune "if officers of reasonable competence could disagree" on whether the challenged actions violated the plaintiff's rights. Malley v. Briggs, 475 U.S. 335, 341 (1986).
 
 
 34
 The defendants do not deny that the illegality of politically motivated terminations of non-policymaking public employees was clearly established at the time of Picha's termination.[3] Instead, they argue that, given the proferred legitimate reasons for Picha's termination, reasonable officials could disagree over whether the termination was illegal.
 
 
 35
 The district court agreed and afforded qualified immunity to Ries and Vittardi. The court reasoned:
 
 
 36
 assuming as the Court must for purposes of this motion, that defendants discharged plaintiff for political reasons, defendants reasonably could have believed that their actions would not be unconstitutional, because they could have believed, pursuant to the teachings of Mt. Healthy, that they would be able to prove that they would have terminated plaintiff even in the absence of the protected activity.
 
 
 37
 (App. 37). The district court's holding appears to be that, even if Ries and Vittardi acted against Picha for purely political reasons, they are still entitled to qualified immunity because they might be able to prove that they also would have fired him for a legitimate reason.
 
 
 38
 The error in this analysis is that it assumes that the defendants would, in fact, have fired Picha in the absence of political consideration. The existence of legitimate grounds for Picha's termination is disputed. As we indicated in Part II C, supra, Picha's submissions tend to cast doubt on the defendant's explanations for their actions.
 
 
 39
 When the disputed issue is the defendants' motivation, the standard a plaintiff must meet in order to defeat a motion for qualified immunity is the same standard that applies to a motion for summary judgment on the merits. Hull v. Cuyahoga Valley Bd. of Educ., 926 F.2d 505, 512 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2917 (1991); Crutcher v. Kentucky, 883 F.2d 502, 504 (6th Cir.1989). Thus, to overcome the qualified immunity defense, Picha need only show that he "has presented sufficient probative evidence that would be strong enough to allow a jury to return a verdict for [him]." Hull, 926 F.2d at 512.
 
 
 40
 Since we have already resolved the defendants' summary judgment motion in Picha's favor, it follows that he must also prevail on the qualified immunity issue. Since Picha has presented sufficient evidence to create a jury issue as to the defendants' motives, Ries and Vittardi cannot claim that they are entitled to qualified immunity simply because they are able to articulate legitimate reasons to terminate Picha. We therefore reverse the grant of qualified immunity to Ries and Vittardi.
 
 
 41
 REVERSED and REMANDED.
 
 
 
 [1]
 In response to a question by the panel, counsel stated: "Common sense would tell us that the mayor would perceive that Mr. Picha was for Mr. Petruska, that he thought he was the better candidate. We're saying let's use common sense. We admit that. We're not saying that he didn't know him. Of course he knew him as the chief inspector
 
 
 [2]
 The district court construed Picha's complaint to state a separate claim for a wrongful discharge based on political connections between Ries and QCI. Even if Picha was not removed because of his political activities, he would have a cause of action if he were removed in order to make room for the political allies of the mayor. See Elrod v. Burns, 427 U.S. 347 (1976). Picha, however, does not appeal the district court's grant of summary judgment against this claim, and it is not clear that he ever advanced this argument as a separate claim
 
 
 [3]
 The Supreme Court first held that certain public employees were protected from political dismissal in 1976. See Elrod, supra note 1. The Court has repeatedly reaffirmed that principle. See, e.g., Mount Healthy supra; Branti v. Finkel, 445 U.S. 507 (1980). Most recently, the Court has extended Elrod to cover politically motivated hiring decisions. See Rutan v. Republican Party of Ill., --- U.S. ----, 110 S.Ct. 2729 (1990)