Lena HELWIG; Roy Spears; Jennifer L. Gilliam, Administrator of the estate of Jamie Gilliam; James E. Frazier; Burl Carter; Debbie Wagoner; Sharon Smith; Charles Mauk; James E. Campbell, Plaintiffs–Appellants,

v.

Charles PENNINGTON, Individually and in his official capacity as Elliott County Judge Executive; Elliott County Fiscal Court, Defendants–Appellees.

No. 00–6381.

United States Court of Appeals, Sixth Circuit.

Feb. 27, 2002.

Before RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge.

All but one of the plaintiffs are former employees of the Elliott County Fiscal Court who allege that newly appointed county judge executive Charles Pennington and the Fiscal Court discharged them from their respective county jobs, in violation of 42 U.S.C. § 1983 and their First Amendment rights of free speech and association for supporting Pennington's political rivals. Plaintiff Debbie Wagoner is still employed by the county, but was forced to assume a county-wide pay cut which she claims effectuated a constructive discharge. The plaintiffs contend that the district court should not have granted summary judgment for the defendants because there are material questions of fact as to whether the actions taken by the defendants were politically motivated. We agree that the defendants did not carry their burden as required by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), as to plaintiffs Helwig, Frazier, and Smith and conclude that material issues remain. We will therefore reverse the grant of summary judgment as to those plaintiffs and remand for further proceedings. We will affirm the court's grant of summary judgment with respect to the claims of the remaining plaintiffs.

I.

This case illustrates the unfortunate and, we are told, frequent change-of-the-guard wranglings that occur when a long-time elected Kentucky county judge executive decides to retire. Outgoing judge executive, David Blair, employed all of the plaintiffs who, in turn, supported defendant Charles Pennington's political rival Mark Kazee in his unsuccessful bid for

county judge executive. Pennington, then county sheriff, defeated opponent Kazee in the May 1998 Democratic primary for the county judge executive position. Pennington was subsequently elected to the position in the November 1998 general election.

On taking office, the defendants promptly abolished the positions held by plaintiffs Lena Helwig (road department secretary), James E. Frazier (police officer), and Sharon Smith (janitor). Within one week of Pennington's swearing-in he initiated a county-wide pay cut that plaintiffs Roy Spears, James Gilliam, Burl Carter, Charles Mauk, and James E. Campbell (all road department employees) claim was tantamount to a constructive discharge. After refusing to accept the pay cut, plaintiffs Spears, Gilliam, Carter, Mauk, and Campbell received notice from Pennington stating: "After our discussion of budget cuts on January 04, 1999, you're [sic] employment is now terminated." Plaintiff Debbie Wagoner (county treasurer) accepted the pay cut and still works for the county ambulance service. The plaintiffs contend that these actions were primarily motivated by the fact that they supported Pennington's political rivals and they challenge the defendants' actions as violating their First Amendment rights. Pennington contends that the employment decisions were motivated by his assessment of the county's dire financial condition and the necessity for an across-the-board reduction of the Elliott County payroll, in an attempt to ensure compliance with the financial-budgetary requirements of Kentucky law.

The defendants' motion for summary judgment was initially referred to United States Magistrate Judge James B. Todd, who recommended it be granted. Following timely objections, the district court adopted the magistrate judge's recommendation and granted the defendants' motion

for summary judgment. The court concluded that the defendants had proven by a preponderance of the evidence that the employment decisions would have been the same absent the protected conduct and that the plaintiffs had not provided any countervailing evidence of unconstitutional retaliation. Without lengthy discussion, the court also concluded that while the defendants' motion did not ask for a dismissal of the claim against Pennington in his individual capacity, the evidence against Pennington in his individual capacity would be the same as the evidence against him in his official capacity. Because the court determined that the evidence was insufficient to maintain a claim against Pennington or the Fiscal Court officially, the court summarily dismissed all of the plaintiffs' federal claims.

II.

A.

We review an order granting summary judgment *de novo*. *Hall v. Tollett*, 128 F.3d 418, 421 (6th Cir.1997). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Because plaintiffs, in cases in which a defendant's state of mind, such as motive, is in issue, must primarily rely on circumstantial evidence and reasonable inferences drawn from the defendant's conduct, we have frequently held that summary judgment is inappropriate. *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir.1990), *vacated on other grounds*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Summary judgment is usually appropriate in state-of-mind cases only if the nonmoving party

" 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Picha v. City of Parma*, No. 91–3501, 1992 WL 57419, at *2 (6th Cir. Mar.25, 1992) (unpublished disposition) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

### B.

■ The plaintiffs contend that they were discharged, directly and constructively, from their respective county positions for exercising their protected First Amendment rights, in violation of 42 U.S.C. § 1983. Essentially, therefore, this case is about the underlying motivations of the defendants' employment decisions. To establish an unconstitutional retaliation claim, this court requires that the plaintiffs prove: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*). This inquiry tracks the Supreme Court's analysis in *Mt. Healthy City School District*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, where the Court held that a plaintiff claiming retaliation for constitutionally protected speech must show that the exercise of his First Amendment rights was a "substantial" or "motivating" factor in the employment decision. *Id.* at 287, 97 S.Ct. 568. If the plaintiff meets this burden, the burden of proof then shifts to the defendant to prove by a preponderance of the evidence that the same employment decision would have been made absent the protected conduct. *Id.* Contrary to what the defendants have told us, the burden-shifting analysis from Title VII cases does not apply. *Sowards*

*v. Loudon County, Tennessee*, 203 F.3d 426, 431 n. 1 (6th Cir.) (citing *Barrett v. Harrington*, 130 F.3d 246, 262 (6th Cir. 1997)), *cert. denied*, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In other words, if the defendants meet their burden, the burden does not then shift back to the plaintiffs to prove pretext.

Upon adopting the magistrate judge's report and recommendation, the district court did not affirmatively rule on whether the plaintiffs had met their initial burden; therefore, we will begin by considering whether the plaintiffs made a sufficient *prima facie* showing as required by *Thaddeus–X*, 175 F.3d at 394.

#### 1. Protected Conduct

■ The plaintiffs claim they were exercising their constitutional right of political association protected by the First Amendment by supporting Pennington's rival, Kazee. This court recognizes that the right of political association is a "well established right," because "political belief and association constitute the core of those activities protected by the First Amendment." *Sowards*, 203 F.3d at 432 (internal quotation marks and citations omitted). Supporting a political candidate clearly falls within the scope of political association intended by the First Amendment. *Id.* Therefore, the plaintiffs' support of Pennington's political rival, Kazee, was a constitutionally protected activity.

#### 2. Adverse Action

■ The second inquiry focuses on whether the plaintiffs have shown that they have suffered an adverse action by the defendants that would likely "chill a person of ordinary firmness" from continuing in the constitutionally protected conduct. *Sowards*, 203 F.3d at 433. Here, the plaintiffs were discharged and/or demoted from their respective county positions or suffered pay cuts. These qualify as adverse employment actions. *Id.*

### 3. Causal Connection

■ Finally, the plaintiffs must show that the exercise of their First Amendment rights was a "substantial" or "motivating" factor in the employment decision. The plaintiffs must tender enough evidence so that a reasonable juror could conclude that the employment decisions were substantially motivated by their constitutionally protected associational rights. In proving their case, the plaintiffs may rely on circumstantial evidence that their political activities caused the adverse employment decisions. *Conklin v. Lovely,* 834 F.2d 543, 546–47 (6th Cir.1987). We conclude that the following evidence, if accepted by a jury, could support the plaintiffs' claim of unconstitutional dismissal: (1) the defendants' retaliatory statements; (2) Pennington supporters received jobs in the new administration; (3) counter-evidence of when Pennington gained access to the financial records; and (4) counter-evidence that financial condition was not dire when Pennington made the employment decisions.

First, the plaintiffs presented evidence that the defendants made numerous retaliatory statements vowing political revenge that tended to show political motivation. Former county treasurer Wagoner testified that Pennington stated two days before assuming office that he could "get rid of us all" and that "he had a whole sack full" of job titles to justify his actions. Wagoner characterized these comments as vengeful and claims they were targeted at those most politically active against Pennington. Former plaintiff Deborah Nickles testified that Pennington threatened to "fire anyone he wanted" because he could "bring somebody else in on a different title cause he had a sack full of titles." Nickles also testified that Pennington's son, Charles Ray Pennington, told witness Tommy Boggs "[t]hat dad is going to get rid of everybody that worked for David

[Blair] before it is all done." Helwig testified that Fiscal Court Magistrate Diane Penix told her that she "would be looking for another job." Further, Helwig testified that Fiscal Court Magistrate Billy Ray Wilson stated, " 'I didn't have anything to do with you all losing your jobs, that was all done and said before we took office.' " Wilson, however, later disavowed this statement in an affidavit. Finally, Frazier testified that Fiscal Court Magistrate Gary Porter told him that "[his] job may be in crisis" if he supported Kazee in the election. The defendants urge us to not consider these statements because they come from interested plaintiffs; however, it is not our role, nor is it the role of the district court when ruling on summary judgment to make credibility determinations—credibility questions are properly left for a jury. This is especially true in state-of-mind cases where evidence of motive is particularly difficult to prove, and the plaintiffs must rely primarily on circumstantial evidence.

Second, the plaintiffs presented evidence that four Pennington supporters received positions in the new administration after the plaintiffs were discharged, suggesting that Pennington was motivated by political factors instead of the suggested economic rationale. Pennington claims that the county's financial crisis necessitated a streamlined county staff and, as a result, the elimination of certain county positions. The plaintiffs offered evidence, however, of at least four Pennington supporters who were offered new jobs in the administration. Further, the plaintiffs offered evidence that Pennington's decision to eliminate Frazier's position as a police officer, in fact, cost the county money as it was no longer able to take advantage of a federal "Cops grant" which served to subsidize Frazier's salary.

The plaintiffs also offered evidence that Pennington did not have access to the

county's financial records when he made the employment decisions and consequently could not have had an economic justification for his adverse job actions. Former county treasurer Wagoner testified that Pennington did not have access to the county's economic ledger sheets when he made the employment decisions on January 4, 1999. Instead, claimed Wagoner, Pennington did not request access to these sheets until January 12, 1999. Also, Nickles testified that Pennington distanced himself from the county finances, and therefore, could not know whether the county was in dire financial condition when he made the employment decisions.

Finally, the plaintiffs offered the following evidence tending to controvert the defendants' position that the county was in a financial crisis: (1) testimony of Blair, outgoing judge executive, who stated that based on his 25–year knowledge of the county's finances, no economic justification existed for the job actions taken; and (2) testimony of Wagoner, former county treasurer, who testified that certain monies, namely the $125,000 in amassed taxes and the FEMA monies, were not considered in the defendants' economic calculus, thereby skewing the actual financial condition of the county.

We find that a reasonable juror could conclude from the plaintiffs' evidence that the employment decisions were substantially motivated by their constitutionally protected associational rights. Therefore, the burden shifts to the defendants to prove by a preponderance of the evidence that the same employment decisions would have been made absent the protected conduct.

The defendants offered objective, economic evidence of the county's dire financial condition as justification that the same employment decisions would have been made absent the protected conduct. With respect to the economic condition of the county, the defendants offered and the district court considered the following evidence: (1) testimony that Pennington had turned over the $125,000 in amassed taxes before the end of 1998 as required by the court order; (2) testimony that the county received only $134,927 of the originally requested and anticipated $181,000 in FEMA funds; (3) testimony that the county had more than $80,000 in unpaid bills and a $265,000 road fund debt; (4) testimony that the county had a reported payroll in excess of $74,000 and an inoperable road department, ambulance service, and county garage; (5) testimony of local government officials who corroborated Pennington's testimony that the county was in debt when he assumed office; and (6) the report completed by the State Auditors Office that concluded: (a) the former administration expended more than 65% of the budget, overspending approximately $220,035.95 by December 31, 1998; and (b) the county did not pay all of its bills in the first half of the fiscal year (July–December 1998), leaving $254,834.65 to be paid by the current administration.

The district court concluded that "the defendants had proven by a preponderance of the evidence that the employment decisions at issue would have been the same absent the protected conduct," and that the plaintiffs did not provide countervailing evidence that "members of the Fiscal Court retaliated against them because of their political associations." In part, we disagree. Essentially, we see the defendants' post-hoc construction of the county's economic status as it existed on January 4, 1999, as transforming the question of motivation into one of objective reasonableness. Even assuming this objective evidence to be credible, we conclude that it does not resolve whether Pennington would have made the same decisions absent the plaintiffs' political affiliation. Pennington's defense is the county's dire economic status. His proof, in our estimation, does not ad-

522

dress whether he knew that status when he made the employment decisions. Viewing the evidence in a light most favorable to the nonmoving party, we conclude that the defendants did not meet their burden as to the discharged plaintiffs Helwig, Frazier, and Smith sufficiently to show that there are no genuine issues in dispute. We, therefore, reverse the district court's grant of summary judgment as to those plaintiffs.

■ We conclude, however, that no material issues remain as to whether the county-wide pay cut with respect to road department employees Spears, Gilliam, Carter, Mauk, and Campbell, and former county treasurer Wagoner, would have been the same absent their political affiliations. The defendants presented unrefuted evidence that the pay cut was an across-the-board measure applicable to all county employees, both carryover employees and new hires alike, including the four new hires. In fact, plaintiff Wagoner conceded in her testimony that all employees in the new administration had to assume the cuts. Similarly, all county employees received two $2,000 pay raises in March and July of 1999, respectively. Against this showing of evenhanded salary reductions and increases, the plaintiffs did not present any evidence of disparate treatment, except to the extent that they were the only employees who declined the pay cut, and as a consequence lost their jobs. This, of course, they had a right to do. However, had the plaintiffs accepted the pay cut, nothing in the record indicates that they would have been discharged or that they would not have received the later incremental pay raises. The plaintiffs would have us conclude that the pay cut, while applying to all county employees, specifically targeted them because of their political affiliation. We refuse to accept this tenuous supposition and simply conclude that such improbable inferences of unconstitutional motive, without more, cannot survive a motion for summary judgment.

### III.

With respect to plaintiffs Spears, Gilliam, Carter, Mauk, Campbell, and Wagoner, we AFFIRM the judgment of the district court. For the reasons discussed above, we REVERSE the district court's grant of summary judgment as to plaintiffs Helwig, Frazier, and Smith and REMAND the case for further proceedings.