NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0237n.06

Case No. 17-6086

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BLUEGRASS DUTCH TRUST
MOREHEAD, LLC,

    Plaintiff-Appellant,

v.

ROWAN COUNTY FISCAL COURT; RAY
WHITE, DARRELL GLOVER, CHARLIE
WINKLEMAN, and STANLEY MESSER,
individually and in their official capacitates as
Rowan County Fiscal Court Members;
JAMES D. NICKELL, individually and in his
official capacity as Former Rowan County
Judge-Executive,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
May 10, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

Before: MERRITT, WHITE, and DONALD, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff, Bluegrass Dutch Trust Morehead, LLC, appeals

the district court's order granting summary judgment in favor of defendants, the popularly-

elected members of the Rowan County Fiscal Court,[1] in their individual capacities,[2] in this action

---

[1]Under the Kentucky Constitution of 1891, the Fiscal Court is the name given to the county legislature and governing body of each of the counties in Kentucky. The Fiscal Court no longer has any responsibility for judicial proceedings. The County Judge Executive, the head of government of the county, is a member of the Fiscal Court. Constitutionally, the Fiscal Court may either be composed of the magistrates for the county or of commissioners elected from the county at large (except from areas within the jurisdiction of an independent city).

[2] The district court dismissed the claims against the Fiscal Court and its members in their official capacities, ruling that plaintiff abandoned its claims against these parties by failing to make any arguments in support of its claims in

brought pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated the First Amendment when the Fiscal Court refused to grant it permission to erect a fence and an electric gate on its property in retaliation for plaintiff's political support. Plaintiff's alleged protected speech consisted of erecting a political yard sign on its property in support of Walter Blevins during the 2014 Rowan County Judge Executive election cycle.[3]

Defendants and the district court appear to assume that the denial of the right to erect the fence in retaliation for plaintiff's support of a particular local candidate for office would in fact violate the First Amendment. Defendants argue instead that there is insufficient proof that their failure to vote in favor of the fence was motivated by plaintiff's support of Blevins in the local election. We therefore do not reach the question whether defendants' conduct would violate the First Amendment if their denial of the variance was motivated solely by plaintiff's opposition to defendants' preferred candidate.

## I.

Plaintiff owns property in Hickory Points Subdivision in Rowan County, Kentucky. At some unspecified point prior to the election in November 2014, Douglas Dutcher, who has an ownership interest in plaintiff and is one of plaintiff's members, erected a large yard sign on plaintiff's property supporting Walter Blevins in the election. Blevins prevailed over his opponent, Richard White, in the November election for Judge Executive of the Fiscal Court. Richard White is the brother of Ray White, one of the members of the Fiscal Court and a defendant in this action. Plaintiff alleges upon information and belief that defendant Ray White

---

its opposition to defendants' summary judgment motion. Plaintiff has not appealed that portion of the district court's order.

[3] Plaintiff also brought a due process claim pursuant to the Fourteenth Amendment, but it has not pursued that issue on appeal.

and the other members of the Fiscal Court knew of plaintiff's support of Blevins instead of White in the election and were "highly displeased." Complaint ¶ 27.

In 2000, almost 15 years prior to the events at issue here, Kinder & Ruth, Inc., a property developer in the Hickory Points Subdivision, granted a utility easement and right of way to the Rowan County Fiscal Court. In August 2014, prior to the election, plaintiff sought permission from the Fiscal Court to encroach upon the utility easement in order to erect a wrought-iron fence and electric gate at the entrance to the driveway of its property in preparation to sell the property. At some point after August 2014, plaintiff retained two lawyers from a local firm, James Frazier and Jaron Blandford, to assist in obtaining the variance. Also at some point after August 2014, Dutcher requested that an employee of the Fiscal Court visit the property to determine if a variance for the gate and fence could be granted. Rowan County Road Foreman Paul Brown visited the property and later informed Dutcher that the Fiscal Court had "no intention of approving the requested variance." Complaint ¶ 31. The record does not reflect why the Road Foreman believed the variance would not be allowed. Plaintiff, through counsel, continued to press the Fiscal Court to allow the variance, including offering to indemnify any claims that might arise by any party, including the utility, in the erection of the fence. The offer was not accepted.

Plaintiff, through counsel, persisted without success in trying to obtain the variance for its property throughout late 2014 and early 2015. At a special session of the Rowan County Fiscal Court on February 23, 2105, Judge Executive Blevins made a motion to allow the requested variance for a fence on the easement. The motion did not receive a "second" from any Fiscal Court member, and the motion died. At some unspecified time after this special session, Cecil Watkins, the Rowan County Attorney, participated in a conference call with plaintiff's attorneys

Blandford and Frazier. Plaintiff alleges upon information and belief that Watkins "confirmed that the reason the Fiscal Court would not agree to the encroachment was based on the [plaintiff's] support for Judge Blevins. . . . [and] was 'payback' and 'politics.'" Complaint ¶ 42.

Blandford and Frazier subsequently withdrew from representation of plaintiff, at least in part, because they believed they might become witnesses in the litigation based on the phone call with County Attorney Watkins. New counsel, Richard Getty, took over representation of plaintiff and plaintiff filed its complaint in February 2016, claiming violation of the First and Fourteenth Amendments. Defendants noticed the depositions of plaintiff's two original lawyers, Blandford and Frazier, presumably based upon plaintiff's allegation in the complaint that the County Attorney, Cecil Watkins, made statements during a conference call with them that the refusal to allow the encroachment was "payback" and "politics" for plaintiff's political support of Blevins. On the day of the depositions, Frazier and Blandford refused to sit for their depositions, citing confidentiality concerns under Kentucky rules. Counsel for Blandford and Frazier stated on the record that the two lawyers were prohibited from testifying absent the informed consent of their former client, plaintiff Bluegrass Dutch Trust, or a court order. Dep. of James Frazier, Nov. 16, 2016, at 4. Plaintiff's counsel, Richard Getty, was present at the deposition and apparently had not been informed before the deposition that plaintiff's former lawyers would not testify. He stated on the record that he disagreed with Frazier and Blandford's position regarding confidentiality, arguing that conversations held between counsel and third parties were not privileged. *Id*. at 4-5. After some debate, the deposition ended with Getty, plaintiff's counsel, announcing his intention to file a joint motion with defendants to

compel the testimony of plaintiff's former counsel. *Id*. at 6. The motion was never filed, and

Getty withdrew as plaintiff's counsel shortly thereafter. [4]

---

[4] Plaintiff filed two letters in the district court that were exchanged in November 2016, shortly after the cancelled depositions, for in camera review by the district court. The first letter is to Getty, plaintiff's lawyer at the time, from the lawyer for Blandford and Frazier, plaintiff's former counsel, reiterating that the two former lawyers would not testify absent the consent of plaintiff and stating that "we do not anticipate that their testimony will support the allegations made in paragraphs 42 and 45 of the complaint . . ., and generally will not be at all favorable to the claims, as currently pled . . . ." Getty responded with surprise, stating that before the deposition he met with Frazier and went over Frazier's testimony

> in great detail, and he clearly indicated to me that his testimony was fully supportive of the position of Mr. Dutcher and the [plaintiff]. He expressly stated to me that he and [Blandford] had spoken with Cecil Watkins, the Rowan County Attorney and that Mr. Watkins told him that the requested variance would not be granted by the Rowan County Fiscal Court because of "politics" and that Mr. Watkins used the phrase "payback" because of Mr. Dutcher's support of County Judge Blevins who unseated a political crony of Mr. Watkins and others. The conversation focused on the fact that Mr. Dutcher had allowed a huge campaign sign for Blevins to be placed in his front yard, visible from a regularly traveled highway.

> There is no mistake in my mind that Jim Frazier related these facts to me exactly as I later recounted them in portions of the Complaint filed in the United States District Court. I believe a copy of the Complaint was provided to Jim, and since its filing, I have had numerous conversations with Jim, who never once recounted anything different than what he told me at the outset. If you are now taking the position that Mr. Frazier's testimony and that of Mr. Blandford would be inconsistent with the allegations in Paragraphs 42 and 45 of the Complaint, which I understand you to be saying in your correspondence, that is not consistent with the truth or what is reflected in the documentation in our files, as confirmed in the Complaint.

> I am also constrained to note that when we discussed the testimony of Messrs. Frazier and Blandford on the day of the scheduled depositions, you and David Guarnieri also pointed out that [Blandford and Frazier] testifying in any way favorable to Mr. Dutcher or the [plaintiff] presented a problem to your firm in that your firm did work for the Kentucky League of Cities and its insurance arm and that testifying favorable [sic] to Mr. Dutcher and the Dutcher Trust would create a conflict. . . .

> As a result of your letter and the position you appear to now be taking on behalf of Messrs. Frazier and Blandford, my firm and I will have to consider whether we are now placed in a position where perhaps myself and others in the firm may be forced to testify contrary to any testimony along the lines recounted by you in your letter that may be later placed on the record under oath by Messrs. Frazier and Blandford. We, of course, will let you know our final position after we consider the matter fully.

> I find it most unfortunate that you have taken this position, and I do not find it credible given what I clearly heard, and later memorialized as to what the testimony of Jim Frazier and Jaron Blandford would be when called upon to provide sworn deposition testimony in the above proceedings.

These two letters were filed under seal and were not referenced in the district court's final order. The motion to file under seal was "overruled as moot," without explanation, by the district court on June 19, 2017, about a month before its final order granting summary judgment to defendants. No further discovery was taken in the case by either party, so we are left without an answer to the contradictions raised in the letters. Plaintiff's counsel did not follow up and get any sworn testimony through depositions or affidavits from any of its former lawyers (Frazier, Blandford, or Getty), so all that remains is a record that contains the "payback" language alleged only upon information and belief in the complaint and the hearsay statement in Dutcher's affidavit, which are insufficient to rebut Watkins' affidavit saying he did not tell plaintiff's counsel that the denial of the variance was retaliatory.

On December 12, 2016, the district court gave plaintiff 30 days to find new counsel. Plaintiff did not retain new counsel until after the 30-day deadline, and, according to the district court's scheduling order, dispositive motions were due almost immediately thereafter. No motion to extend the deadline for filing dispositive motions was filed by plaintiff, and no further discovery was taken. Defendants filed a summary judgment motion, plaintiff responded in opposition, and defendants replied. The only first-hand testimony submitted about the crucial conversation during the conference call between County Attorney Watkins and plaintiff's former lawyers Blandford and Frazier was the affidavit of Watkins, filed by defendants, in which Watkins denied saying anything to plaintiff's counsel about politics or payback. The affidavit of Douglas Dutcher, filed by plaintiff, contained only Dutcher's hearsay testimony stating what his former lawyers told him about their telephone call with Watkins. The district court entered its decision without any hearing, and granted judgment as a matter of law to all defendants. *Bluegrass Dutch Trust Morehead, LLC, v. White*, et al., No. 16-20-HRW, 2017 WL 3530151 (E.D. Ky. Aug. 16, 2017). This appeal followed.

## II.

On appeal, we are left with only plaintiff's First Amendment retaliation claim against the Fiscal Court members in their individual capacities. When alleging an individual-capacity claim under § 1983 against a government official, the plaintiff bears the burden of overcoming the official's defense of qualified immunity, which shields government officials from personal liability for civil damages for conduct that does not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). Qualified immunity is immunity from suit; "its purpose is to shield the official from suit altogether, saving the official

from the burdens of discovery and costs of trial." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003). The qualified immunity analysis turns on two questions: (1) whether a constitutional right has been violated, and (2) whether the right was clearly established. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). If the answer to either question is "no," then the public official is immune from suit.

In its complaint, plaintiff alleges that defendants violated its First Amendment right when the Fiscal Court denied plaintiff's variance request in retaliation for plaintiff's support of Walter Blevins for Judge Executive of the Fiscal Court. A plaintiff seeking to establish a prima facie case of retaliation under the First Amendment must point to evidence sufficient to establish three elements: 1) the plaintiff engaged in a constitutionally protected activity; 2) an adverse action was taken against the plaintiff that caused him or her to suffer an injury that would deter a person of ordinary firmness from continuing to engage in the conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). This standard applies in both protected-speech retaliation claims and in political-affiliation retaliation claims. *See Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 207 (6th Cir. 2010) (finding protected conduct for purposes of a political affiliation claim where plaintiff publicly supported Republican candidates with signs, bumper stickers, attendance at rallies and monetary donations). We have recognized that "[s]upport of a political candidate falls within the scope of the right of political association." *Sowards v. Loudon Cty., Tenn.*, 203 F.3d 426, 432 (6th Cir. 2000) (citing *Elrod v. Burns*, 427 U.S. 347, 356–57 (1976)). If the plaintiff succeeds in establishing these three elements, then the defendant must show that he would have made the same decision in the absence of the protected conduct. *Eckerman*, 636 F.3d at 208. Summary judgment is warranted if, "in light of the evidence viewed in the light

most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.* If the defendant meets his or her burden, that is the end of the inquiry, and the burden does not then shift back to the plaintiff to prove pretext. *Id.*

Here, the constitutionally protected conduct is erecting a yard sign in favor of a political candidate. The "adverse action" is the Fiscal Court's denial of plaintiff's request to encroach on the utility easement. As the district court phrased it, the "crux" of the matter is whether plaintiff has presented sufficient evidence to connect the Fiscal Court's failure to allow the variance to plaintiff's placing of a political yard sign on its property.

## A. Watkins' Alleged Statement to Plaintiff's Counsel

Plaintiff contends that the members of the Fiscal Court failed to consider Judge Executive Blevins' motion as "payback" for plaintiff's support of Blevins. Plaintiff came to this conclusion based primarily on the conference call between Rowan County Attorney Cecil Watkins and plaintiff's counsel at the time, Blandford and Frazier, after the meeting where the Fiscal Court refused to allow the variance. During that call, Watkins allegedly informed plaintiff's counsel that the Fiscal Court's refusal to allow the fence was "payback" and "politics." Dutcher Aff. ¶ 7, attached to Plaintiff's Response to Motion for Summary Judgment. Yet, Dutcher was not a party to that call, so the statement in his affidavit is hearsay. In an affidavit submitted by defendants, Watkins denies saying or implying that the Fiscal Court's refusal to grant the encroachment request was the result of politics or retaliation for plaintiff's support of Blevins. Watkins. Aff. ¶ 7, attached as Exhibit 3 to Defendants' Memorandum in Support of Motion for Summary Judgment.

Although it appears that we are faced with conflicting evidence that might preclude summary judgment, Dutcher's statement in his affidavit is hearsay that generally cannot be

considered in a summary judgment motion. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.")). Rule 56(e) "requires that affidavits used for summary judgment purposes be made on the basis of *personal* knowledge, set forth admissible evidence, and show that the affiant is competent to testify." *Wiley,* 20 F.3d at 225-26 (emphasis added). Therefore, hearsay evidence generally cannot be considered on a motion for summary judgment. *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969).

Plaintiff appears to concede that inadmissible evidence is insufficient to defeat summary judgment, but argues that the alleged statement from Watkins to plaintiff's counsel could fall under the residual hearsay exception found in Federal Rule of Evidence 807 and thereby be admissible. Subsection (a) of the Rule states as follows:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> > (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> > (2) it is offered as evidence of a material fact;
> > (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> > (4) admitting it will best serve the purposes of these rules and the interests of justice.

We recognize that the statement is offered as evidence of a material fact, but our concern stems from the fact that the statement does not have "the equivalent circumstantial guarantees of trustworthiness," and is not "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Plaintiff has not explained why the circumstances of its former attorneys' statements provide a guarantee of trustworthiness,

and plaintiff has not explained why it could not have obtained "through reasonable efforts" nonhearsay evidence in the form of sworn testimony from one of its own former attorneys, Blandford or Frazier, who were part of the call with Watkins. The lawyer for Frazier stated at the deposition that Frazier would testify if plaintiff gave its informed consent to a deposition or if ordered to testify by the district court. The record does not reflect that plaintiff pursued either of these avenues or tried to obtain an affidavit from Frazier or Blandford. In the absence of such efforts, or any other "equivalent circumstantial guarantees of trustworthiness," we cannot say that the alleged statement is admissible under Rule 807. Therefore, Dutcher's affidavit does not provide evidence of Watkins' alleged statements to plaintiff's former counsel that creates a genuine issue of material fact sufficient to survive summary judgment.

## B. <u>State of Mind for Summary Judgment Motion</u>

Plaintiff also argues that summary judgment is improper because a jury should decide whether the defendants were motivated by political retaliation to deny the requested encroachment. We have often held that summary judgment is inappropriate in cases in which a defendant's state of mind is in issue because plaintiffs in such cases must primarily rely on circumstantial evidence and reasonable inferences drawn from the defendant's conduct. *See, e.g., Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990), *vacated on other grounds*, 501 U.S. 294 (1991). Summary judgment is usually appropriate in state-of-mind cases only if the nonmoving party "'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Picha v. City of Parma*, No. 91–3501, 1992 WL 57419, at *2 (6th Cir. Mar. 25, 1992) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Plaintiff asks us to infer ill motive by the defendants because Ray White, brother of Richard White, who ran against Blevins, is a member of the Fiscal Court and presumably rallied all of his

fellow members on the Fiscal Court to deny the requested variance by refusing to second Judge Executive Blevins' motion at the special session of the Fiscal Court concerning the encroachment.[5] Plaintiff has not provided any evidence beyond speculation that all, or any, member of the Fiscal Court aside from possibly Ray White even knew that plaintiff had supported Blevins in the election.

Plaintiff also argues summary judgment should have been denied because only the Fiscal Court members control the proof of their motive for denying the request for the variance. But plaintiff concedes that it failed to give its former counsel, Blandford and Frazier, permission to be deposed. Appellant's Br. at 19 n.7. The two lawyers had personal knowledge of what County Attorney Cecil Watkins said to them on the conference call after the variance request was denied. They could have confirmed or denied whether Watkins said that the denial was "payback" or "politics" during a deposition or even in an affidavit submitted in opposition to the summary judgment motion. Through its own conduct or inaction, plaintiff failed to obtain the testimony of its own former attorneys with first-hand knowledge of the conversation.

## C. **Temporal Proximity**

Plaintiff also argues that the temporal proximity between the appearance of the political yard sign supporting Blevins and the failure of the motion at the Fiscal Court's February 23, 2015, meeting provides the causal link between its protected speech and defendants' adverse action. Yet plaintiff offers no proof of temporal proximity. A review of the Dutcher affidavit, the only evidence offered in response to defendants' summary judgment motion, does not reveal dates when the sign was erected and when it was removed, but almost four months elapsed between the November 4, 2014, election of Blevins and the February 23, 2015, meeting of the Fiscal Court where the variance motion failed. Substantial case law from our court cautions

---

[5] Defendants claim in their brief on appeal that Ray White was not present at the meeting. Appellees' Br. at 18 n.6.

about the permissibility of drawing an inference of causation from temporal proximity alone, and temporal proximity alone is seldom sufficient to support the necessary causation. *See, e.g., Holzemer v. City of Memphis,* 621 F.3d 512*,* 526 (6th Cir. 2010) (noting explicitly this court's reluctance to find retaliatory motive based on evidence of temporal proximity alone, but concluding that the evidence before it, if true, created an inference of retaliatory motive where temporal proximity existed along with other supporting evidence); *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 401 (6th Cir. 2010) ("[O]ur case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference."); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 561 (6th Cir. 2000) (rejecting plaintiff's argument that, under the circumstances of that case, temporal proximity alone was sufficient to support a finding of a causal relationship).

Beyond any assumed temporal proximity, which alone is not enough here, the remainder of the circumstantial evidence that plaintiff relies upon to make a connection between the yard sign and the denial of its request for a variance consists of the same conclusory allegations found in the complaint, supported only by plaintiff's "information and belief." Viewed in the light

most favorable to plaintiff, its  allegations and inferences are simply not sufficient to withstand a

motion for summary judgment.[6]

For the foregoing reasons, we affirm the judgment of the district court.

---

[6] We also note that although plaintiff did not bring an equal protection claim, it alleged in the complaint that it had been treated "differently and unfairly" by the Fiscal Court for its refusal to "approve what should be a routine matter." Complaint ¶ 48.  Plaintiff has not produced any evidence that it was treated unfairly or differently from others seeking an encroachment on a utility easement, or that approval of such encroachments was a "routine matter."